296 So.2d 9 (1974)
Robert W. LASKY and Ann D. Lasky, His Wife, Appellants,
v.
STATE FARM INSURANCE COMPANY et al., Appellees.
No. 42856.
Supreme Court of Florida.
April 17, 1974.
As Revised on Denial of Rehearing May 28, 1974.
*12 Norman Klein, of Schwartz & Klein, North Miami Beach, and Robert Orseck, of Podhurst, Orseck & Parks, Miami, for appellants.
John H. Wahl, Jr., and Edward J. Atkins, of Walton, Lantaff, Schroeder, Carson & Wahl, and Carey, Dwyer, Austin, Cole & Selwood, Miami, for appellees.
Frederick B. Karl and William M. Barr, of Raymond, Wilson, Karl, Conway & Barr, Daytona Beach, for amicus curiae, American Ins. Ass'n.
Roy T. Rhodes, of Rhodes, Stephens, Bryant & Durrance, Tallahassee, for amicus curiae, American Mutual Ins. Alliance and National Ass'n of Independent Insurers.
Bill Wagner, Tampa for amicus curiae  Academy of Florida Trial Lawyers.
Robert L. Shevin, Atty. Gen., and Barry Scott Richard, Deputy Atty. Gen., for intervenor.
DEKLE, Justice.
This appeal comes to us directly from the Circuit Court in and for Broward County and involves the constitutional validity of F.S. §§ 627.737 and 627.738, F.S.A., these being the portions of the 1972 Florida Automobile Reparations Reform Act (hereinafter referred to as the "no-fault" insurance act) providing for tort immunity in certain specified circumstances. Inasmuch as the trial court, in dismissing the action, expressly held the statutes in question to be constitutionally valid in the face of appellants' challenge, our jurisdiction has properly been invoked under Article V, § 3(b)(1), F.S.A., of our state constitution.
The pleadings[1] reflect that Appellant Ann Lasky sustained personal injuries when driving her husband's car on February 18, 1972. The Lasky car was struck by a vehicle operated by Respondent May, and was subsequently determined to be a total loss. Because the Lasky car was a 1958 Ford, its replacement value did not meet the $550.00 "threshold" requirement of our no-fault insurance law as to property damage. Mrs. Lasky's injuries did not include any compound fracture or other injury which would bring her within the provisions of § 627.737(2) allowing her to recover damages for pain and suffering, etc., in the traditional tort action; if she comes within these provisions at all, it must be by virtue of the one thousand dollar medical expense "threshold" provision of F.S. § 627.737(2), F.S.A.[2] The Laskys filed suit *13 specifically seeking recovery for pain and suffering and property damage. Appellees moved to dismiss the complaint on the basis that the aforementioned statutes barred recovery; this motion was granted, the trial court specifically finding the statutes in question to be constitutionally valid in the face of appellant's challenge; this direct appeal ensued.

CONSTITUTIONALITY
Appellants here present a many-faceted attack upon the constitutional validity of both F.S. § 627.737, F.S.A. (limiting damages recoverable in a tort action for personal injury by denying recovery for pain and suffering and similar intangible items of damage unless certain conditions are met) and F.S. § 627.738, F.S.A. (providing an exemption from tort liability for property damage). These statutes, it is asserted, violate appellants' rights of access to the courts[3] and to trial by jury,[4] deny them due process of law and equal protection of the laws,[5] and impose unconstitutional restraints on the right of non-residents to travel.[6]
Although the appellants' challenge is directed at both sections cited above, we need not tarry over the resolution of the challenge to § 627.738 (property damage), inasmuch as we have recently held this section invalid on grounds that it unconstitutionally denied the right of access to the courts under Art. I, § 21, Fla. Const. Kluger v. White, 281 So.2d 1 (Fla. 1973).
We now hold, however, that, with one exception, the personal injury aspects of F.S. § 627.737, F.S.A., are valid and constitutional.
The provisions for tort immunity in personal injury cases present questions differing from those present in Kluger. As we noted in Kluger:
"Had the Legislature chosen to require that appellant be insured against property damage loss  as is, in effect, required by Fla. Stat. § 627.733, F.S.A., with respect to other possible damages  the issues would be different. A reasonable alternative to an action in tort would have been provided... ." 281 So.2d at 5.
Sub judice, we have exactly that situation. F.S. § 627.733(1), F.S.A., requires that:
"Every owner or registrant of a motor vehicle required to be registered and licensed in this state shall maintain security as required by subsection (3) of this section in effect continuously throughout the registration or licensing period."
F.S. § 627.733(3), F.S.A., requires that security be provided either by insurance for the benefits contained in the no-fault law or by such other method approved by the department of insurance as providing equivalent security. Additionally, F.S. § 627.733(4), F.S.A., provides that an owner of a motor vehicle as to which security is required and who does not have such security in effect at the time of an accident has no tort immunity, but is personally liable for payment of the benefits under F.S. § 627.736, F.S.A., for personal injury and has all the obligations of an insurer under the no-fault insurance act. Thus, the owner of a motor vehicle is required to maintain security (either by insurance or otherwise) for payment of the no-fault benefits, *14 and has no tort immunity if he fails to meet this requirement. This provides a reasonable alternative to the traditional action in tort. In exchange for his previous right to damages for pain and suffering (in the limited class of cases where recovery of these elements of damage is barred by § 627.737), with recovery limited to those situations where he can prove that the other party was at fault, the injured party is assured of recovery of his major and salient economic losses from his own insurer.
Protections are afforded the accident victim by this Act in the speedy payment by his own insurer of medical costs, lost wages, etc., while foregoing the right to recover in tort for these same benefits and (in a limited category of cases) the right to recover for intangible damages to the extent covered by the required insurance (F.S. § 627.737(1), F.S.A.); furthermore, the accident victim is assured of some recovery even where he himself is at fault. In exchange for his former right to damages for pain and suffering in the limited category of cases where such items are preempted by the act, he receives not only a prompt recovery of his major, salient out-of-pocket losses  even where he is at fault  but also an immunity from being held liable for the pain and suffering of the other parties to the accident if they should fall within this limited class where such items are not recoverable.
In Kluger, we held that the provisions of F.S. § 627.738, F.S.A., invalidly deprived persons of their right of access to the courts[7] where the statute deprived a person of any and all means by which he could be made whole for property damage less than five hundred and fifty dollars in amount, resulting from a vehicular accident, unless he voluntarily elected to purchase insurance for property damage to his own vehicle. Thus a person who elected not to insure his own vehicle against property damage, and who sustained damage to his car in the amount of five hundred and forty dollars as the result of the fault of another would be without recourse against anyone under § 627.738, despite a clear loss to him and even where evidence of fault of the other party was overwhelming.
The provisions of F.S. § 627.737, F.S.A., present a totally different picture. As we have noted above, insurance coverage[8] as to the personal injury benefits provided by the no-fault insurance law is compulsory. F.S. § 627.733, F.S.A. In contrast to the property damage tort immunity section, all right of recovery is not denied, but only recovery for particular intangible elements of damage in a few situations; there is no immunity from tort liability for tangible damages resulting from injury except where the benefits provided in F.S. § 627.736(1), F.S.A., are payable to the injured party by his insurer or would be so payable but for an authorized deduction or exclusion. F.S. § 627.737(1), F.S.A. Thus the injured party will receive such benefits as payment of his medical expenses and compensation for any loss of income and loss of earning capacity under the insurance policy he is required by law to maintain, up to applicable policy limits, and may bring suit to recover such of these damages as are in excess of his applicable policy limits.
The exemption from tort liability for intangible damages (pain and suffering, mental anguish and inconvenience) is applicable only to a limited class of cases in which the benefits for medical expenses are less than one thousand dollars.[9] In computing the one thousand dollar figure, a person entitled to receive free medical *15 and surgical benefits is credited with the equivalent value of the services so provided him, as a part of the $1,000. § 627.737(2). We also deem worthy of note that § 627.736(1) and (1)(a) specify as to medical expenses that these must be such as are "reasonable" and that such expenses shall be "for necessary medical, etc." services. Strict observance of these wise legislative predicates applying to the $1,000 level, should serve to meet the arguments that the cost to the "rich man" will easily exceed such a threshold while the services "that a poor man cannot afford will always be under the threshold." In this day of ever-increasing medical and hospital costs, the $1,000 minimum seems less than illusory.
Unlike the arbitrary dollar limitation involved in Kluger, the provisions here involved create a reasonable classification. By providing that suit can be brought to recover for pain and suffering in situations where the "threshold" amount of reasonable and necessary medical expenses has been reached, the Legislature has made a reasonable classification, a point later discussed more fully. It is also provided that even where these conditions are not present as a basis for suit by the injured party against the tortfeasor, the injured party is still entitled to receive the benefits provided by § 627.736(1) (medical bills, loss of income, etc.) from his own insurer, which benefits are payable regardless of fault.
In exchange for the loss of a former right to recover  upon proving the other party to be at fault  for pain and suffering, etc., in cases where the thresholds of the statute are not met, the injured party is assured a speedy payment of his medical bills and compensation for lost income from his own insurer, even where the injured party was himself clearly at fault. Additionally, he can recover for such expenses which are in excess of his policy limits by the traditional tort action, and may recover for intangible damage (pain and suffering, etc.) by means of such suit in all but the limited class of cases above mentioned. Considering this pattern of recovery, together with the fact that coverage is made compulsory by § 627.733, there is a clear distinction from the total deprivation of any right of recovery for property loss under $550.00 disapproved in Kluger. The property provisions considered in Kluger did not allow any reasonable alternative to the traditional tort action; the provisions of F.S. § 627.737, F.S.A., do provide a reasonable alternative to the traditional action in tort, and therefore do not violate the right of access to the courts guaranteed by Art. I, § 21, Fla. Const.

DUE PROCESS OF LAW
It is next argued that our no-fault insurance law is unconstitutional by virtue of violations of the Due Process Clauses of Art. I, § 9, Fla. Const., and of the Fourteenth Amendment to the U.S.Const. Again we must disagree.
Appellants have recognized that one asserting the unconstitutionality of an act has the burden of demonstrating clearly that the act is invalid. Village of North Palm Beach v. Mason, 167 So.2d 721 (Fla. 1964). The test to be used in determining whether an act is violative of the due process clause is whether the statute bears a reasonable relation to a permissible legislative objective and is not discriminatory, arbitrary or oppressive.[10] It therefore becomes necessary for us to examine the objectives of the Legislature in enacting this statute in order to determine whether the provisions of the act bear a reasonable relation to them. In doing so, we do not concern ourselves with the wisdom of the Legislature in choosing the means to be used, or even with whether the means chosen will in fact accomplish the intended *16 goals; our only concern is with the constitutionality of the means chosen.
F.S. § 627.731, F.S.A., which purports to state the purpose of the no-fault insurance law, is of little help in this regard, since it merely states the effect of the law without elucidating its underlying purposes. From an analysis of the statute itself, together with such other sources as legislative debate, law review commentary and opinions of other courts discussing the constitutional validity of analogous laws,[11] we have concluded that the legislative objectives involved here included a lessening of the congestion of the court system, a reduction in concomitant delays in court calendars, a reduction of automobile insurance premiums and an assurance that persons injured in vehicular accidents would receive some economic aid in meeting medical expenses and the like, in order not to drive them into dire financial circumstances with the possibility of swelling the public relief rolls. Additionally, it is suggested that the Legislature considered recent contentions that the traditional tort system of reparations has led to inequalities of recovery, with minor claims being overpaid and major claims underpaid in terms of their true value,[12] that the tort system of reparation was unduly slow and inefficient and that the preexisting automobile insurance system was unduly costly;[13] it has also been suggested that the pressing necessity of paying medical bills often forced an injured party to accept an unduly small settlement of his claims. These and other perceived drawbacks in the "fault" system have been abundantly discussed in the legal literature on the subject.
In order to determine whether the act in question is reasonably related to these permissible legislative objectives, we are compelled next to examine what changes the act makes in the prior tort law. F.S. § 627.737, F.S.A., grants an exemption from liability in tort for vehicular accidents, to persons meeting the insurance requirements of F.S. § 627.733, F.S.A., to the extent that benefits are payable under the provisions of § 627.736(1) and also to the extent that an injured party may not recover for pain, suffering, mental anguish and inconvenience unless certain threshold criteria have been met. The act also requires[14] persons within its ambit to provide and maintain security for the provision of the benefits required under § 627.736(1); failure to maintain such security results in revocation of the registrant's driving license and vehicle registration. F.S. § 627.735(1), F.S.A. Tort actions against persons not required to provide security are unaffected. F.S. § 627.740, F.S.A. Persons required to provide security and failing to do so have no tort immunity and are personally liable, under F.S. § 627.733(4), F.S.A., for the payment of benefits provided for in F.S. § 627.736, F.S.A.
The provisions of the no-fault act apply (basically) to private passenger vehicles. The inclusion of private passenger vehicles and the exclusion of commercial vehicles finds support in the vastly greater number of private vehicles on our roads, which presents a greater statistical possibility of accidents involving them, and hence a greater possibility of the filing of suits. This also assures prompt payment of out-of-pocket losses to a large group and reduces greatly the likelihood of the filing of suits, thus reducing congestion in the courts and delays in court calendars and affording prompt relief to injured parties *17 in need. Private individuals are more likely to be economically forced to accept an unduly small settlement of their claims than commercial concerns. Additionally, since collisions between private automobiles make up a large segment of all motor vehicle accident suits,[15] the inclusion of private vehicles within the act's coverage tends to lessen the perceived dangers of financial ruin to persons injured in such collisions (and the concomitant drain on the public treasury by way of possible public assistance payments) by providing such persons with prompt reimbursement of their most essential out-of-pocket losses. We therefore conclude that the provisions of the act do bear a reasonable relationship to the legislative objectives, rendering the act constitutionally sound.
Similarly, the "threshold" limitations for recovery of intangible damages are reasonably related to the legislative objectives. As noted above, these provisions would allow recovery of such damages in the major situations where any substantial intangible damage is likely to be present. Admittedly, situations can be perceived in which severe pain might be uncompensated, and other situations in which suit could still be brought for extremely minor intangible damages. But perfection is not required in classification; "problems of government are practical ones and may justify, if they do not require, rough accommodations,  illogical, it may be, and unscientific." Metropolis Theatre Co. v. Chicago, 228 U.S. 61, 33 S.Ct. 441, 57 L.Ed. 730 (1913). Some inequality in result is not enough to vitiate on due process grounds a legislative classification grounded in reason. Lindsley v. National Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911).
It seems to us that the medical expense requirements employed by the Legislature bear a sufficient relationship to the seriousness of the injury in general, and therefore to the seriousness of the ensuing pain and suffering, to comply with due process requirements. Pinnick v. Cleary, Mass., 271 N.E.2d 592, 42 A.L.R.3d 194 (1971). The threshold requirements, taken in connection with the provisions for first-party payment of claims for such items as medical expenses and loss of income, will obviate the necessity to bring a cause of action in many cases, thereby reducing court congestion and delay and assuring prompt reimbursement of essential losses. A reasonable relationship to permissible legislative objectives is also present here.
It may seem from the above discussion that we are ascribing consequences to our no-fault insurance law which have yet to be demonstrated, and which may turn out to be non-existent. What we actually are doing is presuming the existence of circumstances supporting the validity of the Legislature's action, in the absence of any evidence to the contrary. This is the course we must follow, pursuant to Munn v. Illinois, 94 U.S. 113, 24 L.Ed. 77 (1877); State ex rel. Adams v. Lee, 122 Fla. 639, 166 So. 249 (1935); and Ex Parte Lewis, 101 Fla. 624, 135 So. 147 (1931). Assuming the circumstances to be as described above, the act before us is reasonably related to a permissible legislative objective, and comports with the requirements of due process of law.

EQUAL PROTECTION OF THE LAWS
Appellants' further and related contention is that the act in question denies them equal protection of the laws contrary to Art. I, § 2, Fla. Const., and the Fourteenth Amendment of the U.S.Const. We observe initially that a number of the discriminations alleged by the appellants have not been shown to be applicable to them; hence, appellants are without standing to assert such discriminations. Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. *18 603 (1943); Standard Stock Food Co. v. Wright, 225 U.S. 540, 32 S.Ct. 784, 56 L.Ed. 1197 (1912); Cronin v. Adams, 192 U.S. 108, 24 S.Ct. 219, 48 L.Ed. 365 (1904). Nonetheless, we shall later briefly discuss the points so raised, after disposing of the arguments upon which appellants do have standing.
In order to comply with the requirements of the Equal Protection clause, statutory classifications must be reasonable and non-arbitrary, and all persons in the same class must be treated alike. Silver Blue Lake Apartments v. Silver Blue Lake Home Owners Assn., 225 So.2d 557 (Fla. App.3d 1969). When the difference between those included in a class and those excluded from it bears a substantial relationship to the legislative purpose, the classification does not deny equal protection. Daniels v. O'Connor, 243 So.2d 144 (Fla. 1971).
Appellants' basic equal protection argument deals with the "threshold" requirements of F.S. § 627.737(2), F.S.A., relating to circumstances in which an exemption is granted from tort liability for damages for pain and suffering, etc. The "threshold" requirement for seeking recovery for pain and suffering, etc., is met when the accident gives rise to a situation falling into any one of the following three classes:
(1) those situations in which the benefits payable exceed $1,000 in medical benefits; or
(2) those situations in which the $1,000 medical expense threshold is not reached, but either a permanent injury or death results; or
(3) those situations in which the $1,000 medical expense threshold is not reached and no death or permanent injury results, but one of the other listed types of injury is present.
We deal with each of these classes in turn.
It is contended that the one thousand dollar medical expense portion of the "threshold" provision denies equal protection by virtue of variations in medical expenses in various areas of the state, and further that impoverished persons cannot meet this amount of medical expenses as easily as can persons of greater means. Ignoring for the moment appellants' lack of standing to make the latter argument, no evidence has been presented to this Court showing that poor persons are charged less for medical services than their more financially able counterparts. Available insurance or welfare benefits may make it appear so, but we are shown no proof of it. As earlier noted, medical services to which a person is entitled without charge are to be treated as if payment had been made in computing the "threshold" amount. As to variations among geographical areas, we note, as did the court in Pinnick, supra, that a slight and unintended inequality in result is not enough to vitiate a legislative classification based in reason. Lindsley v. National Carbonic Gas Co., supra.
We have further above noted that the $1,000 "threshold" amount refers to "all reasonable expenses for necessary medical," etc., expenses (§ 627.736(1)(a)) and that § 627.736(5) indicates that "reasonable expenses" are not to be determined solely by the amount of the bill rendered by the physician or hospital, that section providing that the physician, hospital, etc., may charge only a reasonable amount for the services rendered, which shall not be in excess of the amount such person or institution customarily charges for like services in cases involving no insurance. It is not therefore the amount of the actual bill rendered to the patient which determines if the $1,000 "threshold" has been met, but rather the reasonable amount referred to in the statute and such medical expense as shall be "necessary."
The second noted class of cases provided for in the threshold requirements of F.S. § 627.737(2), F.S.A., is that in which the *19 $1,000 medical expense "threshold" has not been reached, but in which death or permanent injury results. There is no restriction upon a suit where a death ensues. This is as it should be. Clearly, this criterion does not deny equal protection of the laws, for as it is said, "Death is the great leveler." The ancient philosopher Horace tells us, "With equal foot, Pluto knocks at hovels of the poor and at the tyrant's towers." As surely as "All men are created equal," so are all "equal" in death.

PERMANENCY
Similarly, equal protection of the laws is not offended by differentiating between non-permanent injuries and permanent injuries, i.e., those specified in § 627.737(2): permanent disfigurement, loss of a body member, permanent injury within reasonable medical probability and permanent loss of a bodily function, which have a reasonable likelihood of creating substantial pain and suffering.
The grammatical construction of § 627.737(2) makes it abundantly clear that the $1,000 medical expense threshold is to be considered separately from the other thresholds, since it provides: "only in the event that the benefits which are payable for such injury ... exceed one thousand dollars or the injury or disease consists in whole or in part of... ." (emphasis ours) Obviously, if the expenses exceed $1,000, it makes no difference what type of injury has occurred, so far as meeting the threshold is concerned. And despite the grammatical intermingling of the permanent injury and death thresholds with the "weight-bearing bone" and compound (etc.) fracture thresholds, the thrice-repeated legislative emphasis on permanency of the injury indicates a substantial legislative concern not to deprive persons permanently injured of any chance at all to recover for pain, suffering and inconvenience where the $1,000 medical expense threshold was lacking. This justifies the treatment of permanency as a threshold separate and apart from the others.
Likewise, then, the "permanent injury" threshold (as we shall refer to it) does not constitute a denial of equal protection of the laws. As we have noted above, a classification does not deny equal protection if it is reasonable and non-arbitrary, treating all persons in the same class alike, and the difference between those included in the class and those excluded from it bears a substantial relationship to the legislative purpose. Daniels v. O'Connor, supra; Silver Blue Lake Apartments v. Silver Blue Lake Home Owners Assoc., supra. The classification here in question treats all persons permanently injured in a vehicular accident alike, thus meeting one element of the test. It is not arbitrary to differentiate between persons permanently injured and those who will recover from their injuries insofar as allowing only the former group to recover (under this particular threshold) for pain and suffering. Rather, this is a reasonable classification allowing those most likely to incur substantial and prolonged pain to recover damages to recompense them, while not granting such right of recovery to those substantially less likely to incur any prolonged pain. This threshold enables one who has lost an arm or leg, or lost the use of his hands, or who has sustained a permanent and excruciating soft tissue injury to recover some compensation for the substantial injury sustained if it be permanent in nature. At the same time, it does not (by itself) allow recovery for pain and suffering where a transient injury, such as a sprained wrist leaving no permanency, is sustained. By providing for recovery for pain, suffering and inconvenience in a category of cases involving a substantial likelihood of long-term suffering while not authorizing it in a category far less likely to give rise to substantial suffering, the Legislature has not been arbitrary or unreasonable. This is amplified by the fact that an alternate threshold is provided by the $1,000 medical provision for persons who have sustained serious but transient injuries. § 627.737(2). Admittedly, the legislative classifications may result in allowing *20 recovery for pain and suffering in some cases where the suffering is relatively minimal while perhaps forbidding recovery for such items in a few cases where a significant amount of suffering is in fact present. But perfection in classification is not required and rough and unscientific accommodations are permissible so long as they are not unreasonable or arbitrary. Metropolis Theatre Co. v. Chicago, supra. The permanent injury threshold provided under the statute meets this test.
Finally, the permanent injury classification bears a substantial relationship to the legislative purposes discussed previously. By allowing recovery, in appropriate cases, for pain and suffering incurred in an accident causing permanent injury to the plaintiff, but not granting a right to such relief (unless on some other basis) to those sustaining transient injuries, the statute aids in lessening the congestion of court calendars and reducing concomitant delays in the disposition of cases by reducing the number of suits filed; it eliminates one element of recovery in certain cases, leading to lower jury verdicts and hence, indirectly, to lower auto insurance premiums. It has the potentiality of lessening inequalities of recovery previously noted (supra, p. 15), and eliminates at least some of the delay and inefficiency of the tort system of reparations. A substantial relationship to permissible legislative objectives having been shown, and the other tests having been met, we find no denial of equal protection of the laws to be present.
In sum, we here uphold both the $1,000 medical expenses threshold and the threshold listed in F.S. § 627.737(2), F.S.A., if:
"... the injury or disease consists in whole or in part of permanent disfigurement, ... loss of a body member, permanent injury within reasonable medical probability, permanent loss of a bodily function, or death."

PORTION UNCONSTITUTIONAL
This leaves for our consideration the third class of cases, being those in which the "necessary" medical benefits do not have a reasonable value in excess of $1,000, and in which no death or permanent injury results, but in which:
"... the injury or disease consists in whole or in part of ... a fracture to a weight-bearing bone, [or] a compound, comminuted, displaced or compressed fracture... ."
§ 627.737(2)
Although this alternative "threshold" test was undoubtedly well intended, it unfortunately constitutes a denial of equal protection of the laws by discriminating among members of the class of persons injured in automobile accidents who have survived such accident with less than $1,000 in medical expenses and no permanent injury. One who is involved in an accident and sustains a broken little toe may maintain, under this provision, an action for pain and suffering, since the little toe contains a weight bearing bone. On the other hand, although one's skull is not considered a weight bearing bone, it is normally a more vulnerable and consequential area of injury. A person involved in an accident who suffered a fractured skull which is not a compound, comminuted, displaced or compressed fracture, may not maintain an action for pain and suffering under this provision, unless the fracture is considered to be a permanent injury. The same is not true as to the weight-bearing little toe. One who suffers a soft tissue injury may not seek recompense for pain and suffering unless it can be proved that the injury is permanent; yet these have been shown to be among the most serious of bodily injuries. Under the provisions of § 627.737(2) dealing with this category of cases, a person sustaining a fracture as described in the statute (as the broken little toe described above) would be allowed to *21 proceed with suit, but a person who receives a severe wrenching of the neck and spine and the associated soft tissue injury would not be allowed to proceed with suit unless the injury were a permanent one or the medical cost exceeded $1,000. A threshold of "any permanent injury" separately constitutes a uniform classification, even though in many instances it might also reach the $1,000 medical expense threshold.
Damages for pain and suffering would be allowed the person who suffered the fractured bone, although he may have relatively little such pain; on the other hand, the person with the soft tissue injury who may suffer great pain and discomfort is allowed no redress in the courts under this provision. Such results cannot reasonably be said to rest on a rational basis, but are clearly arbitrary and unreasonable, and for that reason this provision of F.S. § 627.737(2), F.S.A. denies equal protection of the laws insofar as it provides a threshold based upon the above-cited irrational list of injuries (not resulting in death or permanent injury) where the $1,000 medical expense threshold has not been crossed. We so hold.
The unconstitutionality of this particular portion of the provision, however, does not render the entire section invalid on the earlier discussed equal protection ground. As noted above, the other three alternative means of "crossing the threshold" by $1,000 reasonable medical expenses or by reason of death or permanent injury are constitutionally valid. The invalid portion of this provision may be severed from the balance of the section without destroying the effectiveness of the act as a whole, since two alternative means of "crossing the threshold" remain to give vitality to the section. Valid portions of an enactment may be given effect after elemination of unconstitutional portions of the same act so long as the valid and invalid portions are not essentially and inseparably connected in substance or so interdependent that the Legislature would not have passed one without enacting the other. State ex rel. Lamar v. Dillon, 32 Fla. 545, 14 So. 383 (1893); State ex rel. Moodie v. Bryan, 50 Fla. 293, 39 So. 929 (1905).
If, when the unconstitutional part of a statute is stricken, that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, the valid portion of the statute will be sustained. State ex rel. Lamar v. Dillon, supra; State ex rel. Moodie v. Bryan, supra; City of Miami v. State, 158 Fla. 56, 27 So.2d 829 (1946). Applying these tests to the instant provision we hold that the invalid portion of § 627.737 (2), as separate, independent "thresholds" alone, namely, the fracture of a weight-bearing bone or the compound, comminuted, displaced or compressed fracture, may properly be severed from the remainder of that section, and therefore that the remaining portions of that section are constitutionally valid and enforceable.
Nor do the provisions of F.S. § 627.736(4), F.S.A., providing that workmen's compensation benefits received must be credited against the first-party benefits which are provided, violate equal protection, despite the fact that benefits received from other collateral sources need not be so credited. Unlike workmen's compensation benefits, the other common collateral sources, such as insurance policies and the like, require separate payments by the individual; neither are they generally available by virtue of a statutory scheme similar to our Workmen's Compensation Act.[16] Although a difference in treatment is present, there is no arbitrary or unreasonable classification, or any invidious discrimination.
Appellants also complain of denial of equal protection by virtue of exclusions inherent in the act's definition of a "motor vehicle," on the ground that taxis, motorcycles, *22 busses and commercial vehicles do not come within the provisions of the no-fault act. As we have indicated above, there is a reasonable basis upon which the Legislature may exclude these types of vehicles from the coverage of the act; the classification is not arbitrary or capricious, and thus does not violate the equal protection provision. Merely because the Legislature has seen fit to remedy a perceived evil in one area, it is not compelled to extend that remedy to all areas in which it might be applied. State v. White, 194 So.2d 601 (Fla. 1967). To compel the Legislature to pursue an "all or nothing" approach would in effect forbid the Legislature from determining, on a limited basis, how well or badly a proposed course of action worked when put into practice.
We have examined the other claimed violations of equal protection asserted by the appellants (despite their lack of standing to raise these points) and find them to be devoid of merit. The no-fault insurance act has not been shown to violate the equal protection of the laws, except as to the alternative "threshold" requirements of F.S. § 627.737(2), F.S.A., of particularized injuries involving weight bearing bones, etc., as outlined above.

RIGHT TO TRIAL BY JURY
Appellants' next contention is that the provisions of F.S. § 627.737, F.S.A., deprive them of their right to trial by jury under Fla. Const. Art. I, § 22, and the Seventh Amendment, U.S.Const., to the extent made applicable to the states by the due process clause of the Fourteenth Amendment, U.S.Const. We disagree.
We note initially that the no-fault law does not on its face purport to deal with trial by jury in any regard, and that accordingly any such deprivation must result, if at all, from the application of the act. The only manner in which the jury trial rights of appellants[17] are involved is found in the tort liability exemption provisions; that is to say, appellants are deprived of their right to a jury trial only in those cases where preexisting tort liability has been abolished by the act, removing the cause of action which would have been triable by a jury.
Does the abrogation of an existing cause of action, triable by jury, violate the right to jury trial? If such is the case, the Legislature would lose a great deal of flexibility, for it could not enact laws such as workmen's compensation acts, which abrogate a preexisting right to jury trial. As was stated by the U.S. Supreme Court in Mountain Timber Co. v. Washington, 243 U.S. 219, 37 S.Ct. 260, 61 L.Ed. 685 (1917), with respect to the Washington workmen's compensation law:
"[W]e find nothing in the act that excludes a trial by jury. As between employee and employer, the act abolishes all right of recovery in ordinary cases, and therefore leaves nothing to be tried by jury." 243 U.S. at 235, 37 S.Ct. at 264. (Emphasis added)
Similarly here, the no-fault act abolishes all right of recovery of specific items of damage in specific circumstances, and, as to those areas, leaves nothing to be tried by a jury. See also, Opinion of the Justices, 113 N.H. ___, 304 A.2d 881 (1973), reaching a similar result as to New Hampshire's no-fault insurance act, and our own previous decisions upholding the validity of our workmen's compensation act. While the abolition of a cause of action triable by jury might in some instance be unconstitutional on another ground,[18] the present statutory provisions do not violate the right to trial by jury.

*23 RESTRAINT ON NON-RESIDENTS' RIGHT TO TRAVEL
Appellants argue that the provisions of F.S. § 627.737, F.S.A., infringe unconstitutionally on the rights of non-residents to travel to or in the State of Florida. We need not reach the merits of this contention, since the record clearly reflects that appellants are residents of this state and hence without standing to invoke this argument. It seems apparent, however, that non-residents invoking the privilege[19] of operating dangerous instrumentalities over Florida highways do so subject to Florida's restrictions and regulations thereon.

DISPOSITION OF PRESENT CASE
In most circumstances, the above discussion would suffice to dispose of the case before us, since we here uphold the ruling of the trial court dismissing the complaint as filed. However, the unique circumstances involved in this case persuade us that a simple affirmance of the order appealed would be contrary to the interests of justice. As noted earlier, the appellants in this action have now in fact exceeded the one thousand dollar "threshold" requirement of F.S. § 627.737(2), F.S.A., and thus would be entitled, under the act, to pursue their claims for intangible damages for pain and suffering, etc., absent the trial court's order of dismissal prior to such a showing. To allow the earlier dismissal of the complaint with prejudice to stand would have the effect of depriving the appellants of their rights under the statute by virtue of dismissal of an action that had not accrued[20] as of the time of dismissal. Under such an interpretation, the dismissal in the instant cause would bar all recovery despite qualification thereafter to sue. We find such a construction untenable and hold that the plaintiff may sue for such damages once the "threshold" has been crossed, so long as it is within the statute of limitations. Where the "threshold" amount has not yet been reached, the cause of action cannot be said to accrue until such time as the "threshold" is crossed.
Accordingly, we remand the cause to the Circuit Court in and for Broward County to proceed, upon any required amendment, based upon the benefits payable to appellants under F.S. § 627.736(1)(a), F.S.A., having now exceeded in amount the sum of one thousand dollars, in order to allow an opportunity to pursue a recovery in tort of damages for pain, suffering, mental anguish and inconvenience pursuant to F.S. § 627.737(2), F.S.A., as the facts may appear, and for such other and further proceedings as may be necessary, not inconsistent with this opinion.
It is so ordered.
ADKINS, C.J., and ROBERTS, McCAIN and CARLTON (Retired), JJ., concur.
ERVIN, J., concurs in part and dissents in part with opinion.
BOYD, J., dissents.
ERVIN, Justice (concurring in part and dissenting in part):
F.S. Sections 627.737 and 627.738, F.S.A. of the "no-fault act" are facially unconstitutional. Insofar as the majority holds these sections in part unconstitutional I concur, but insofar as they hold them in part constitutional I dissent.
These sections are an unwarranted deprival of the rights of motor vehicle accident *24 tort victims without their consent to recover their actual, traditional and long-recognized bodily injury damages in actions at law from tort feasors.
These sections though represented to provide alternative remedies for tort action recoveries are in fact special interest legislation lacking due process and equal protection, and are violative of Sections 2, 9, 21 and 22 of Article I of the Florida Constitution, and the 7th and 14th amendments to the United States Constitution. Compare such cases as Kluger v. White (Fla. 1973), 281 So.2d 1; Fronton, Inc. v. Fla. State Racing Comm. (Fla. 1955), 82 So.2d 520, 523; Faircloth v. Mr. Boston Distiller Corp. (Fla. 1970), 245 So.2d 240; Cawthon v. Town of DeFuniak Springs (1924), 88 Fla. 324, 102 So. 50; Gates v. Foley (Fla. 1971), 247 So.2d 40; Carter v. State Road Department (Fla. 1966), 189 So.2d 793, and Grace v. Howlett (1972), 51 Ill.2d 478, 283 N.E.2d 474.
These unconstitutional sections are patently unrealistic to modern medical costs and the disparities of individual wealth. They do not adequately provide for a reasonable equivalent to a tort action recovery. Moreover, they afford only insurance coverage "up to applicable policy limits." Their chief design is to eliminate tort action recovery under the threshold of $1,000 in order to facilitate the automobile liability casualty business by greatly reducing the benefits payable by casualty companies.
This Court has consistently held that a general law which fails to operate uniformly throughout the State is unconstitutional and invalid unless it contains a classification predicated upon a reasonable basis. State v. Newell, 85 So.2d 124 (Fla. 1956); Baker v. Gray, 133 Fla. 23, 182 So. 620 (1938). Where an attempted classification is arbitrary and unreasonable, in that it excludes those similarly situated from the group, and there is no rational basis for classification, the statute will not be upheld. Fronton, Inc. v. Florida State Racing Commission, 82 So.2d 520 (Fla. 1955).
In Daniels v. O'Connor, 243 So.2d 144 (Fla. 1971), this Court stated that it is well settled that the equal protection clause is violated when a classification made by an act is arbitrary and unreasonable. However, when the differences in treatment between those included and those excluded from the class bear a real and substantial relationship to the purposes sought to be obtained by the act, the classification is valid, as against an attack under the equal protection clause.
Under Fla. Stat. § 627.737, F.S.A., entitled "Tort Exemption," there is an exemption from tort liability for damages because of bodily injuries, sickness or disease arising out of the ownership, operation, maintenance or use of a motor vehicle in this State. However, subsection (2) of this section provides that the injured party may bring an action in tort for pain and suffering in the event that the benefits payable under the act exceed $1,000, or that the injury or disease consists in whole or in part of permanent disfigurement, a fracture to a weight-bearing bone, a compound, comminuted, displaced or compressed fracture, loss of a bodily member, permanent injury within a reasonable degree of medical probability, or permanent loss of a bodily function, or death.
It further provides that any person who is entitled to receive free medical and surgical benefits shall be deemed in compliance with the requirements of this subsection upon a showing that the medical treatment received has an equivalent value of at least $1,000. Fla. Stat. § 627.736, F.S.A., in explaining what is meant by "reasonable amount," explains that no charge may be in excess of the amount the person or institution customarily charges for like products, services and accommodations in cases involving no insurance.
It is difficult to conceive why pain endured from a fall down a flight of stairs should be assigned a higher value than if incurred in a motor vehicle accident, but even assuming, arguendo, that the Legislature can, in the proper exercise of its police *25 power, separate motor vehicle accident victims into a special class, and provide for them a remedy different than that available to persons sustaining similar injuries by all other means, it must nevertheless provide equally for the members falling within the same class. Stated differently, even where a valid basis for classification exists, it is impermissible for the Legislature to discriminate between members of the class.
It is a matter so well known that the Court should take judicial notice of the fact that medical expenses vary from geographical area to geographical area and even within geographical areas; but this is not even necessary here, since the complaint as amended makes these allegations which must be accepted as true.
Thus, it is clear, and the record clearly shows, that medical expenses vary from one area to another and within areas. Likewise, some people take longer to heal than others, some are more sensitive to pain than others, and some visit physicians more frequently, while others consult the medicine chest in their home. All of this, the threshold of $1,000 would ignore. Thus, upon application of the formula, if identical twins were injured in a common accident and one was taken to a hospital in Miami and the other to a hospital in Jacksonville, both having suffered identical injuries, the twin hospitalized in Miami could reach the $1,000 threshold twice as fast as the twin who was hospitalized in Jacksonville. The same absured consequences would flow from the application of the threshold if the same twins were placed in the same hospital with the same identical injuries, but one was placed in a private room and the other in a semi-private room or a ward. The arbitrariness of the formula would further be compounded if they had different doctors who charged different amounts, and further, if one doctor happened to be a specialist and the other a general practitioner. How can the Legislature possibly contend that a statute which would breed such results can be said to rest on a rational basis? This legislation unabashedly favors the rich  who can afford to pay and are charged and do pay higher medical fees and thus reach the threshold much faster  over the less affluent.
In Fla. Stat. § 627.737, F.S.A., the tort exemption section, certain injuries were set forth which would support an action for damages for pain and suffering. One of these is "a fracture to a weight-bearing bone, a compound, comminuted, displaced or compressed fracture." One who is involved in an accident and sustains a broken little toe on his foot may maintain an action for pain and suffering, for the little toe contains a weight-bearing bone. On the other hand, it is clear that one's skull is not considered a weight-bearing bone. A person involved in an accident, who suffers a fractured skull which is not a compound, comminuted, displaced or compressed fracture, may not maintain an action for pain and suffering, unless same is considered to be a permanent injury.
Also, one who suffers a soft tissue injury may not recover for pain and suffering unless it can be proved that the injury is permanent.
Under the provisions of Fla. Stat. § 627.737, F.S.A., a person sustaining a fracture as described in the statute would be allowed to proceed with suit, but a person who receives a severe wrenching of the neck and spine and the associated soft tissue (such as the typical "whiplash" injury) would not be allowed to proceed with suit unless the injury was a permanent one or the medical cost exceeded $1,000. Oddly enough, under ordinary circumstances the person who receives the bone fracture will recover 100 per cent use of the injured limb with little or no permanent discomfort. On the other hand, damages resulting from a soft tissue injury heals of its own accord, but may result in extensive scarring of the soft tissue, including the nerves. Damages for pain and suffering are allowed the person who suffered the *26 fractured bone, although he will have relatively little such pain. On the other hand, the person with the soft tissue will suffer pain and discomfort for some time without being allowed any redress in our Court.
The wealthy man with a soft tissue injury will easily incur medical expenses in excess of $1,000 by receiving treatment from the more expensive doctors and hospital. On the other hand, the person with a small income will go to the family doctor and be given limited treatment. The wealthy man may thereby recover for pain and suffering, while the poor man cannot.
The examples of unequal treatment in the subject legislation are without parallel. In order to favor the automobile casualty insurance industry, private automobile accident victims are curtailed their traditional tort remedies; but victims of commercial vehicle accidents and all other types of victims of tort feasors are not similarly curtailed. Also, as I have described, the discrimination between rich and poor people in the matter of recovery of medical expenses is beyond compare.
Economically it is far easier for the wealthy to cross the $1,000 medical expense threshold and sue tort feasors than the average citizen. This is patent unfairness based on wealth disparity.
The Legislature can do a better job than it has done. It unblushingly has decided to flatly ignore Section 21, Art. I, Dec. of Rights, Fla. Const. providing "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." (Emphasis supplied.) The Legislature has no authority to take away the rights of the public without their consent to recover for tort injuries.
The majority opinion is difficult to understand. It agrees with Kluger v. White, supra, as to the unconstitutionality of the $550 floor regarding property damage, but gives its unqualified approval to the $1,000 threshold in bodily injury cases.
In the $1,000 threshold "no fault" insurance gimmick much is "dredged up" by the majority to justify contravening the Constitution. According to the majority it will do all sorts of things "includ[ing] a lessening of the congestion of the court system, a reduction in concomitant delays in court calendars, a reduction of automobile insurance premiums and an assurance that persons injured ... would receive economic aid ... in order not to drive them into dire financial circumstances with the possibility of swelling the public relief rolls ..." Moreover "the tort system ... tended to promote perjury ... etc." What a bonanza and blessing "no fault" immunity is! But what about the Constitution?
The majority labors the proposition concerning medical expense for bodily injury that the poor man and rich man are on equal footing. The rationalization is that all such expenses must be reasonable. But who is to judge and police the situation to bring reasonableness to bear in so variable an area. Usually the poor man goes into the hospital ward; the affluent into the hospital room. The wealthy get the finest doctors and the better medical treatment  such are the facts of medical life. Discrimination is quite apparent in this aspect of "no-fault" when viewed in terms of reality.
It appears to me that this subject should be re-reviewed by the Legislature not only to eliminate the patent violations of constitutional provisions, but to bring the provisions of the law into conformity with the traditional rights of the average citizen to vindicate his wrongs in the courts. There have been many complaints in latter years that the courts are being replaced by bureaucratic administration; trial by jury is "old hat," and that special interests run rampant. There is little in these "no-fault" sections to lead one to believe otherwise.
If despite Section 21 of Art. I of the State Constitution the Legislature from time to time under precedents established *27 by this Court can eliminate the redress of particular injuries, or access to the courts for such purpose, there will be no end or limit to the extent legislative power may be exercised to legislate away particular causes of actions and remedies, and particularly so if some segment of the private sector wishes to be immune from suit and can lobby through its immunizing legislation.
There are certain fundamental rights to redress for injury or wrongs which the Constitution precludes elimination by the Legislature. Those tort remedies which are the subject of this litigation are fundamental. There may be a few borderline classes of claims, e.g., heart balm or breach of promise or some usury causes of action which for reasons of clear public policy and obvious compelling state interest may be eliminated by the Legislature, but not those of the traditional tort kind involved in the instant case where an arbitrary threshold limit of $1000 is plucked out of the air by the Legislature.
For example, we no longer need "Death by wrongful Act" statutes or other tort statutes to give us remedies for bodily injuries which are already clearly contemplated in the basic concepts of guaranteed constitutional rights. No scheme to favor special interests by taking away basic rights should be countenanced.
There can, of course, be consent elimination of the right to tort remedy (as for example under workmen's compensation laws) provided such consent is completely voluntary and reasonable alternative compensation is provided and is not the result of coercion of any kind either by governmental or economic compulsion. But there is no such "consent" present in the sections of statute here under attack
Even without these sections or new corrective legislation, the State Treasurer and Insurance Commissioner by adopting appropriate administrative rules and by making rate structure adjustments can implement the carrying forward of the concept of "no fault" in the remainder of the statute without taking away from injured persons without their consent their basic rights to recover in law actions damages from tort feasors.
NOTES
[1] Certain facts specifically found by the trial court pursuant to our temporary relinquishment of jurisdiction are additionally considered here.
[2] Upon relinquishment of jurisdiction to the trial court, it was developed that appellants had accepted benefits in an amount in excess of one thousand dollars for medical expenses resulting from the accident in question. It appears (although the record does not conclusively show this to be the case) that appellants first became aware that medical expenses exceeded one thousand dollars at some time after the trial court dismissed the action and while this appeal was pending. Having accepted jurisdiction, we review the constitutional points involved.
[3] Such right is asserted under Art. I, § 21, Fla. Const.
[4] Asserted under Art. I, § 22, Fla. Const., and the Seventh Amendment to the U.S. Const.
[5] Asserted under Art. I, §§ 2 and 9, Fla. Const., and the Fourteenth Amendment to the U.S.Const.
[6] The basis for this right is not stated, but presumably rests on the Privileges and Immunities Clause of the Fourteenth Amendment, U.S.Const. In any event, the basic right is well-established.
[7] Fla. Const., Art. I, § 21.
[8] Or its approved equivalent. As used hereafter in this opinion, the term "insurance" refers to the security required to be maintained by F.S. § 627.733(3), F.S.A., whether the means by which such security is provided is insurance or some other approved method.
[9] F.S. § 627.737(2), F.S.A., referring to benefits payable under F.S. § 627.736(1)(a), F.S.A.
[10] Harrell v. Schleman, 160 Fla. 544, 36 So.2d 431 (1948); Adams v. American Agricultural Chemical Co., 78 Fla. 362, 82 So. 850 (1919).
[11] See, generally, validity and construction of "no-fault" automobile insurance plans, 42 A.L.R.3d 229.
[12] See the report of the U.S. Dept. of Transportation entitled "Motor Vehicle Crash Losses and Their Compensation in the United States; a Report to the Congress and the President," which would tend to confirm such a consideration by the Legislature.
[13] The Dept. of Transportation report cited above concluded that the preexisting automobile insurance system "would appear to possess the highly dubious distinction of having probably the highest cost/benefit ratio of any major compensation system currently in operation in this country."
[14] F.S. § 627.733, F.S.A.
[15] We are informed that automobile litigation constitutes 17% of the total number of all suits filed.
[16] F.S. Chapter 440, F.S.A.
[17] We do not purport to deal today with compulsory arbitration features as to insurers, such as may be found in F.S. § 627.738(5), F.S.A.
[18] Kluger v. White, 281 So.2d 1 (Fla. 1973).
[19] See Smith v. Gainesville, 93 So.2d 105 (Fla. 1957); Jones v. Kirkman, 138 So.2d 513 (Fla. 1962).
[20] The use of the terms "accrued" and "cause of action" in this context is different from the historical definitions, due to the possible subsequent accrual of the further cause of action at such later time as the $1,000 threshold of F.S. § 627.737, F.S.A., is reached.