618 So.2d 771 (1993)
Janice STEWART, Appellant,
v.
ALLSTATE INSURANCE COMPANY, etc., Appellee.
No. 92-2672.
District Court of Appeal of Florida, Fifth District.
May 14, 1993.
*772 Glenn Klausman of Jacobs & Goodman, P.A., Altamonte Springs, for appellant.
Paul M. Thompson of Beers, Jack, Tudhope & Wyatt, P.A., Maitland, for appellee.
W. SHARP, Judge.
Stewart appeals from a final summary judgment which denied her personal injury protection coverage under an insurance policy issued by Allstate Insurance Company for health insurance premiums paid by her employer. The county court certified the following question to us as one of great public importance:[1]
IS THE PAYMENT OF PREMIUMS FOR MEDICAL HEALTH INSURANCE PREVIOUSLY PROVIDED BY THE INJURED INSURED'S EMPLOYER, A "DISABILITY BENEFIT" CONTEMPLATED BY THE LEGISLATURE, IN THE CREATION OF THE NO FAULT STATUTE, SPECIFICALLY, SECTION 627.736(1)(b), FLORIDA STATUTES?
We answer the question "yes", and reverse.
The parties stipulated to the facts in this case. On September 1, 1991, Stewart was injured while driving Emma Parker's car. The car was insured by Allstate and Stewart was entitled to PIP coverage under Allstate's policy issued to Parker.
As part of Stewart's employment contract with her employer, the employer paid her an hourly wage, and in addition paid Stewart's monthly health insurance premium. In order to be entitled to continuous payment of insurance benefits by her employer, Stewart was required not to miss more than sixty continuous days of work. As a result of the accident, Stewart was disabled and unable to return to work for more than sixty days.
To obtain continuing coverage under her employer's health plan, Stewart was required to pay $228.34 per month out of her own pocket, after October 18, 1991. She presented her claim to Allstate to reimburse her for sixty percent of the insurance premiums she had to pay after her accident, pursuant to section 627.736 and Allstate's policy. That section requires motor vehicle insurance policies issued in Florida to provide (among other things) the following benefits:
(b) Disability benefits.  Sixty percent of any loss of gross income and loss of earning capacity per individual from inability to work proximately caused by the injury sustained by the insured person, plus all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for the injury, the injured person would have performed without income for the benefit of his household ...
Section 627.736(1)(b), Fla. Stat. (Supp. 1990).
Allstate argues that health care premiums paid by an employer are merely fringe benefits and should not be considered income under the no fault law. Allstate says that the intent of the Legislature can best be determined by the plain meaning of the words used in the statute. "Gross income" and "fringe benefits" are defined as follows:
Gross income. The total income of a business or individual before deductions; including salary, commissions, royalties, gains from dealings in property, interest, dividends, etc. I.R.C. § 61.
Fringe benefits. Side benefits which accompany or are in addition to a person's employment such as paid insurance, recreational facilities, profit-sharing plans, paid holidays and vacations, etc. Such benefits are in addition to regular salary or wages and are a matter of bargaining in union contracts.
Black's Law Dictionary 601, 687 (5th Ed 1979). A plain reading of the no fault law, Allstate contends, requires the conclusion that health insurance is a fringe benefit and fringe benefits are not included as gross income.
In support of her position, Stewart cites Hunter v. Allstate Insurance Company, 498 So.2d 514 (Fla. 5th DCA 1986). In Hunter, this court held that the requirement that PIP carriers pay for "all reasonable *773 expenses for necessary medical ... services" under the medical benefits portion of section 627.736 includes the reasonable cost of transportation to obtain those services. In so holding, this court relied on the policy that the no fault act is to be liberally construed in favor of the insured and we looked to analogous provisions of the workers compensation law for guidance.[2]
By further analogy, Stewart points out that under the workers compensation law, the term "wages" is defined as follows:
(24) "Wages" means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the injury ... and employer contributions for health insurance for the employee or the employee's dependents ...
But, even before the definition of wages in the workers compensation statute was amended to include employer contributions for health care, it was held that employees can recover fringe benefits such as medical and life insurance benefits supplied by the employer. Jess Parrish Memorial Hospital v. Ansell, 390 So.2d 1201 (Fla. 1st DCA 1980). The court recognized that fringe benefits which employees receive often have significant value and may be included as a similar advantage in a determination of the employee's average weekly wage.
There appear to be no Florida cases on point regarding the interpretation of section 627.736(1)(b) and employer paid health benefits. But we agree with Stewart that section 627.736(1)(b) has been liberally interpreted. See United Service Automobile Ass'n v. Holland, 283 So.2d 381 (Fla. 1st DCA 1973). The statute's use of the more expansive term "gross income" rather than "net income" or "earnings" indicates the Legislature intended a liberal, rather than a restrictive interpretation.
In this case, Stewart received the benefit of her employer's paid health care premiums as part of her employment remuneration package. It has an established monthly value, and was specifically for her benefit. Although some "fringe benefits" might not be encompassed in the term "gross income", because of the lack of these characteristics, we think in this case, Stewart's employer-paid medical premiums were part of her gross income, and she is accordingly entitled to recover sixty percent of her loss pursuant to section 627.736(1)(b) and Allstate's insurance policy.
REVERSED.
COBB and HARRIS, JJ., concur.
NOTES
[1] Fla.R.App.P. 9.030(b)(4).
[2] The workers compensation provision requiring employers to provide "such remedial treatment, care and attendance as the injuries shall require" has been interpreted to include reasonable travel expenses incurred by the employee in presenting himself at the place where the treatment was provided. Mobley v. Jack & Son Plumbing, 170 So.2d 41 (Fla. 1964).