GRIFFIN, J.
Petitioner, Ernesto Vasques [“Vas-ques”], appellant below, seeks a writ of certiorari to quash the circuit court’s appellate decision affirming the Seminole County court’s summary judgment in favor of Respondent, Mercury Casualty Company [“Mercury”].
On December 29, 2001, Vasques severely injured his hand while working on an automobile in the garage of Maida L. Shehata. As a result of the accident, Vasques incurred hospital bills and orthopaedic surgery bills in excess of $26,000. Additionally, Vasques lost his job as an electrical helper. Vasques sought personal injury protection [“PIP”] benefits under Sheha-ta’s private passenger automobile policy with Mercury. His claim was denied.
After Mercury denied Vasques’ claim, Vasques filed suit to establish his entitlement to PIP benefits. Mercury’s affirmative defense asserted that Mercury was entitled to deny Vasques’ claim because *1267 the Shehatas had made material misrepresentations to Mercury regarding facts of the accident. Specifically, during the investigation of this claim by Mercury, the insured, Maida Shehata, her son, George Shehata, and George’s girlfriend gave recorded statements to Mercury. In thosé statements, they denied being aware of the December 29, 2001, incident or even knowing Ernesto Vasques. Subsequently, however, in their depositions taken two years after the claim was denied, both Maida Shehata and George Shehata [“Shehatas”] admitted that they knew Vasques and were aware of the accident on December 29, 2001. They admitted previously telling Mercury otherwise. In their testimony, they suggested they lied to protect themselves from any claim by Vasques.
Mercury moved for summary judgment, contending that condition number 10 of the Mercury policy concerning misrepresentations relieved it of any liability in this case. Mercury has acknowledged that, but for the Shehatas’ misrepresentations, Vasques would be entitled to coverage.[1] Mercury also concedes that Vasques made no misrepresentations to Mercury concerning his claim.
The trial court granted Mercury’s “Motion for Final Summary Judgment,” agreeing that condition 10 relieved Mercury of liability under the policy. From that summary final judgment, Vasques appealed to the circuit court. The circuit court, sitting in its review capacity, affirmed the summary final judgment in favor of Mercury. Vasques now seeks review in this court, contending that the error below is of such a nature and magnitude that it warrants second-tier appellate review. We agree, grant the writ and quash the circuit court’s decision.
A district court may exercise its discretion to grant certiorari review when procedural due process has not been afforded or there has been a violation of a clearly established principle of law resulting in a miscarriage of justice. Progressive Express Ins. Co. v. Physician’s Injury Care Center, Inc., 906 So.2d 1125, 1126 (Fla. 5th DCA 2005). We agree that the circuit court’s decision affirming the judgment in favor of Mercury violated clearly established principles of Florida law resulting in a miscarriage of justice for Vas-ques.
Although we agree with Vasques that Mercury relies on a misinterpretation of the policy language on which it based its denial of coverage, the principal basis upon which we conclude that jurisdiction lies is that the policy language at issue — if interpreted as Mercury urges — would be inconsistent with the PIP statute and represent a violation of Florida’s public policies governing insurance.
The policy language at issue provides:
We may deny coverage of an accident or loss if you or an insured person has concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.
Does this language mean a misrepresentation by an insured in connection with his own claim or anybody’s claim? Can an *1268 insured person engage in fraud “in connection with the presentation or settlement of a claim” if he is neither the presenter nor the settler of the claim? Everyone acknowledges that Vasques did not conceal or misrepresent anything, nor did he engage in any fraudulent conduct regarding his injury and/or claim. The only misrepresentation was on the part of the Sheha-tas, who denied that the incident that caused Vasques’ injury ever occurred. We agree with petitioner that because Vas-ques, the party making the claim for PIP coverage, did not make any misrepresentations regarding his claim, the above-quoted policy provision does not authorize Mercury to deny coverage. The supreme court has explained that:
As a fundamental proposition, where the language in an insurance policy is subject to differing interpretations, the policy language “should be construed liberally in favor of the insured and strictly against the insurer.” Moreover, it is axiomatic that “[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is ambiguous.” Policy provisions that tend to limit or avoid liability are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy, and exclusions to coverage are construed even more strictly against the insurer than coverage clauses.
Flores v. Allstate Ins. Co., 819 So.2d 740, 744 (Fla.2002) (citations omitted).
Apart from the fact that any doubts in construction of the policy language must be construed in favor of Vasques, an interpretation of this policy language that any misrepresentation by one insured person could support the denial of PIP benefits for another unrelated third party would lead to absurd results. The language has to mean a misrepresentation by the person who is making the claim. Here, the She-hatas, although insureds, did not and could not present or participate in the settlement of a claim to Mercury for this incident. Rather, Vasques as the injured party entitled to coverage under the Shehatas policy, presented the claim to Mercury, and he made no misrepresentation.
The circuit court departed from clearly established principles of Florida law when it failed to uphold Florida’s well-established “Innocent Insured Doctrine.”[2] Several Florida cases, including Everglades Marina, Inc. v. American Eastern Development Corp., 374 So.2d 517 (Fla.1979); Overton v. Progressive Insurance Co., 585 So.2d 445 (Fla. 4th DCA 1991); and Auto-Owners Insurance Co. v. Eddinger, 366 So.2d 123 (Fla. 2d DGA 1979), stand for the proposition that fraud committed by a coinsured will not void the coverage of the innocent co-insured unless clearly stated in the policy.[3] The *1269 lower court said this case is not covered by the “innocent co-insured” doctrine because Vasques was not a “co-insured” but “at best” is a third-party beneficiary of the policy. Leaving aside the question whether Vasques is a “co-insured,” the considerations that animate the “Innocent Co-Insured Doctrine” are not based on a category of “insured” but on the fact of innocence. Contrary to the view of the circuit court, the purpose of the “innocent insured” doctrine is especially pertinent where, as here, the claimant is especially innocent. Vasques had no connection to the Shehatas, except to work on their car. He had no exposure to or control over their actions. Unlike the coinsureds in the cases cited above, all of whom had some close connection to the “guilty” insured, yet were deemed “innocent” by the courts, Vasques was almost a stranger to the Shehatas and their lies were designed to thwart his recovery for his injuries.
We also exercise our narrow authority to issue a writ of certiorari in this case because the circuit court’s decision impermissibly disregards Florida’s public policy as expressed in the PIP statute. PIP insurance is a statutorily required coverage to comply with Florida’s no-fault law and is an integral part of the no-fault statutory scheme. The purpose of the PIP statute is to provide for speedy payment of medical bills and compensation for lost income for accident victims. Lasky v. State Farm, Ins. Co., 296 So.2d 9 (Fla.1974). Given its purpose, both this court and the Florida supreme court have held the provisions of Florida’s No-Fault Act must be construed liberally in favor of the insured. See Government Employees Ins. Co. v. Novak, 453 So.2d 1116 (Fla.1984); Stewart v. Allstate Ins. Co., 618 So.2d 771 (Fla. 5th DCA 1993); Hunter v. Allstate Ins. Co., 498 So.2d 514 (Fla. 5th DCA 1986).
The PIP statute in effect at the time of Vasques’ injury did not expressly permit an exclusion for fraud, but there was no blanket prohibition against the inclusion of general conditions affecting coverage or even exclusions, so long as the limitation was consistent with the purposes of the statute. See, e.g., Carguillo v. State Farm Mut. Auto. Ins. Co., 529 So.2d 276 (Fla.1988). However, restrictions on statutorily mandated coverage must be carefully examined because exclusions that are inconsistent with the purpose of the statute are invalid. Flores, 819 So.2d at 745. In light of the overarching purposes behind the statute’s protection, conditions or exclusions must be carefully scrutinized to determine, first, whether the condition or exclusion unambiguously excludes or limits coverage, and then, second, to determine whether enforcement of a specific provision would be contrary to the purpose of the no-fault statute. Id. Furthermore, because PIP is a statutorily mandated coverage, analogies to cases interpreting coverages that are not statutorily mandated, such as provisions in fire, life, and property insurance policies, may not necessarily be illuminating. Id.
Manifestly, a policy provision that is interpreted to eliminate personal injury protection benefits for an innocent third-party claimant based on misstatements made by the policyholder to the insurer would be inconsistent with the statutory scheme. Florida has gone to extreme lengths to assure that personal injury protection benefits follow every licensed vehicle and cover any injured person. It makes no sense that this mandated coverage for an injured person could evaporate simply because someone else designated an “insured” under the policy — even though a stranger to the claim — lied.
This view is validated by the current PIP statute. After this claim arose, the *1270 Florida legislature added a provision to the PIP statute expressly authorizing an insurer to deny PIP benefits based on fraud, but that statute is limited to a circumstance where the one seeking the benefits is the person that committed fraud. Specifically, subsection 4(g) of section 627.736 provides:
Benefits shall not be due or payable to or on the behalf of an insured person if that person has committed, by a material act or omission, any insurance fraud relating to personal injury protection coverage under his or her policy, if the fraud is committed to in a sworn statement by the insured or if it is established in a court of competent jurisdiction. Any insurance fraud shall void all coverage arising from the claim related to such fraud under the personal injury protection coverage of the insured person who committed the fraud, irrespective of whether a portion of the insured person’s claim may be legitimate, and any benefits paid prior to the discovery of the insured person’s insurance fraud shall be recoverable by the insurer from the person who committed insurance fraud in their entirety.
(Emphasis added.) This amendment expresses the extent to which fraud or misrepresentation may eliminate PIP coverage. To allow insurers to deny coverage of PIP benefits where someone other than the claimant makes a false statement for the purpose of defeating coverage would violate the well-articulated public policy considerations giving rise to personal injury protection benefits in this state.
WRIT GRANTED; DECISION QUASHED; and REMANDED.
SAWAYA and TORPY, JJ., concur.

. At the hearing on the Motion for Summary Judgment, Mercury's counsel stated:
We wouldn't be here before you today if it weren’t — but for these representations made by the Shehatas. They represented all along nothing happened. Had they said something happened, we wouldn’t be here. Mercury at that point if everybody was consistent, Mr. Vasques, hurt myself, and the insured said, yes, he did hurt himself in our garage—
THE COURT: You would have paid.
MR. WAINORIS: They would have paid.

. See Michael V. Laurato, Sr., Return to Innocence: One Good Reason (along with several other arguments) Why the Extension of Florida’s Innocent Co-Insured Doctrine Makes Good Public Policy Sense, 7 Fla. Coastal L.Rev. 59 (2005).

. In Michigan Millers Mutual Insurance Corp. v. Benfield, 140 F.3d 915, 925 (11th Cir.1998), the Eleventh Circuit found:
In the policy at issue we find “an insured” to be ambiguous in that it is unclear whether this phrase in this contract establishes joint or several liability on the part of the insured. Given that the "an" of "an insured” is undeniably "inconspicuous language,” and given that the language is ambiguous, we do not hesitate to conclude that Florida’s doctrine of the innocent co-insured shields Mrs. Benfield from the imputation of liability on account of the alleged misdeeds of Mr. Benfield, her coinsured. Our holding is supported by the relevant Florida case law and by the facts of this case.