415 So.2d 12 (1982)
Frederick W. CHAPMAN and Liberty Mutual Insurance Company, Appellants,
v.
Dennis P. DILLON, Jr., Etc., Dennis P. Dillon, and Aurelia M. Dillon, Etc.
No. 61013.
Supreme Court of Florida.
March 18, 1982.
Rehearing Denied July 7, 1982.
*13 John M. McNatt, Jr., Jack W. Shaw, Jr. and J. Stephen O'Hara, Jr. of Mathews, Osborne, McNatt, Gobelman & Cobb, Jacksonville; and Janet R. DeLaura and Jon E. Johnson of Smalbein, Eubank, Johnson, Rosier & Bussey, Rockledge, for appellants.
Sammy Cacciatore and James A. Sisserson of Nance, Cacciatore & Sisserson, Melbourne, for appellees.
*14 Frederick B. Karl, General Counsel, Florida Association of Insurance Agents and Richard C. McFarlain of McFarlain, Bobo, Sternstein, Wiley & Cassedy, Tallahassee, for Florida Association of Insurance Agents, amicus curiae.
Delbridge L. Gibbs of Marks, Gray, Conroy & Gibbs, Jacksonville, for The National Association of Independent Insurers, The American Insurance Association, The Alliance of American Insurers, The Florida Association of Domestic Insurance Companies, The Florida Insurance Council, Inc., State Farm Mutual Automobile Insurance Company and Continental Casualty Company, amici curiae.
Jim Smith, Atty. Gen., and Thomas R. Tedcastle, Asst. Atty. Gen., and Daniel Y. Sumner, Counsel for Bill Gunter, Commissioner of Insurance, Tallahassee, for The State of Florida, amicus curiae.
Larry Klein, West Palm Beach, for The Academy of Florida Trial Lawyers, amicus curiae.
BOYD, Justice.
This case is before us to review a decision of the district court of appeal that declared invalid certain provisions of the Florida Automobile Reparations Reform Act (the "no fault" insurance law), sections 627.730-627.741, Florida Statutes (1979). Dillon v. Chapman, 404 So.2d 354 (Fla. 5th DCA 1981). Pursuant to article V, section 3(b)(1) of the Florida Constitution, we have jurisdiction.
Dennis Dillon, a minor, and his parents, sued Frederick Chapman and Liberty Mutual Insurance Company for damages, including pain and suffering, incurred in an automobile collision allegedly caused by Chapman's negligence. Dillon suffered severe but nonpermanent injuries and had medical expenses exceeding $1,000. The defendants moved for dismissal or a judgment in their favor, asserting that the complaint failed to state a cause of action because the facts alleged did not meet the "tort threshold" under section 627.737. Plaintiffs responded with the contention that section 627.737 is unconstitutional as a denial of access to courts, due process, and equal protection. The trial court issued an order holding for the defendants and finding the statute constitutional.
On appeal, the district court found sections 627.736(1),[1] 627.737,[2] and 627.739[3] of *15 the no-fault statute unconstitutional. The court reasoned that legislative changes since the time of Lasky v. State Farm Insurance Co., 296 So.2d 9 (Fla. 1974), and *16 Kluger v. White, 281 So.2d 1 (Fla. 1973), had rendered the statute invalid. Since the legislative changes complained of are reasonable attempts by the legislature to correct some of the practical problems which the no-fault law had posed, we find that principles and reasoning in Lasky v. State Farm Insurance Co. are still applicable. We therefore conclude that the "no fault" insurance law as codified in the 1979 statutes is constitutional. As did the district court, we shall address each of the constitutional issues separately.

DENIAL OF ACCESS TO THE COURTS
Dillon was not allowed to maintain his suit for pain and suffering because he did not meet the threshold requirements of section 627.737(2), Florida Statutes (1979), insofar as his injuries were not permanent. He argues that these requirements deprive him of his right of access to the courts under article I, section 21, Florida Constitution. The district court recognized that in Lasky we held that the denial of the right to recover such damages did not violate this constitutional provision because the legislature had established a reasonable alternative. The court concluded, however, that subsequent changes in sections 637.736, 627.737, and 627.739 rendered the alternative no longer reasonable.
The two changes the district court was most concerned about were the lowering of the personal injury protection (PIP) benefits and the raising of the permissible PIP "deductible." When we decided Lasky, section 627.736(1) provided for recovery of 100% of medical expenses and 100% or 80% of lost income depending on whether the benefits were to be included in gross income for federal income tax purposes. Chapter 77-468, section 33, Laws of Florida, amended that section reducing the benefits to 80% of medical expenses and 80% or 60% of lost income. Other provisions in the no-fault act when Lasky was decided required PIP coverage of $5,000, section 627.736(1), Florida Statutes (1971), with a maximum deductible of $1,000. § 627.739, Fla. Stat. (1971). In 1976 the legislature raised the maximum deductible to $2,000. Ch. 76-266, § 6, Laws of Fla. In 1977 it raised the maximum deductible to $4,000. Ch. 77-468, § 37, Laws of Fla. In 1979 the legislature raised the PIP coverage from $5,000 to $10,000, ch. 78-374, § 3, Laws of Fla., and the maximum deductible from $4,000 to $8,000. Ch. 78-374, § 6, Laws of Fla.
*17 The district court concluded that these changes meant that there was no longer a reasonable alternative for redress of injuries suffered in automobile accidents and said:
Injured parties no longer receive full compensation for their expenses or lost income. Increased deductibles result in decreased PIP coverage and diminish the likelihood that an injured party will promptly recover his major out-of-pocket expenses arising from the accident. Injured parties are now able and are being forced to resort to the courts to recover that portion of their damages not payable by insurance carriers by reason of the no-fault act  remaining uncovered expenses, lost income and deductibles. One of the most strident arguments in favor of no-fault type insurance legislation has been that the multitude of suits unnecessarily crowds the courts with injured persons' lawsuits. This legislation does not reduce the number of lawsuits, then, but merely reduces the amount to be sued for. Of course, we cannot ignore the very practical consideration that some lawsuits will not be filed because they are not "worth it" but that is certainly not the way our society views redress for injured persons; the constitution and our very makeup requires every person to be redressed for wrongs against him.
404 So.2d at 357.
We do not agree with the district court's conclusions about the statute. Lowering PIP benefits and increasing the amount of permitted optional deductibles will not necessarily result in reduced compensation and increased litigation. Many motorists of this state are covered by some other type of insurance or benefit program that would help pay for their medical expenses and lost income if they were injured in an automobile accident. The benefits from these collateral sources are often more than sufficient to pay for the expenses not included in the PIP coverage. Thus motorists entitled to these collateral benefits would receive full compensation without needing to file a suit.
Furthermore we do not find anything in Lasky to indicate that that decision was predicated upon a motorist's being insured for the full amount of his medical expenses and lost income. Instead the crux in Lasky was that all owners of motor vehicles were required to purchase insurance which would assure injured parties recovery of their major and salient economic losses.
Thus, the owner of a motor vehicle is required to maintain security (either by insurance or otherwise) for payment of the no-fault benefits, and has no tort immunity if he fails to meet this requirement. This provides a reasonable alternative to the traditional action in tort. In exchange for his previous right to damages for pain and suffering (in the limited class of cases where recovery of these elements of damage is barred by § 627.737), with recovery limited to those situations where he he can prove that the other party was at fault, the injured party is assured of recovery of his major and salient economic losses from his own insurer.
Lasky v. State Farm Insurance Co., 296 So.2d at 13-14 (emphasis in original). Hence it was the fact that injured parties were assured prompt recovery of their major and salient economic losses, not all of their economic losses, which this Court found dispositive in Lasky.
The changes made by the legislature since then have not fundamentally changed this essential characteristic of the no-fault law. Although the percentage of recovery of medical expenses has been reduced to 80% and the percentage of recovery of lost income has been reduced to 60% or 80%, the absolute limits of PIP coverage have been increased from $5,000 to $10,000. Regardless of the actual amount of recovery, an injured person will receive prompt payment for his major and salient economic losses even where he himself is at fault. Thus the provisions of section 627.737 still provide a reasonable alternative to the traditional action in tort and therefore do not violate the right of access to courts guaranteed by article I, section 21 of the Florida Constitution.

*18 DUE PROCESS OF LAW
The district court found that sections 627.736(1), 627.737(1), and 627.739(1), Florida Statutes (1979), unconstitutionally denied due process in that they did not bear a reasonable relationship to permissible legislative objectives. The district court explained:
The changes to sections 627.736, 627.737 and 627.739 noted above cause the 1979 no-fault act to no longer be reasonably related to several of the permissible legislative objectives noted in Lasky: (1) injured parties are able to initiate suits for expenses not payable by an insurer thereby obviating the objective of lessening court congestion; (2) the inability of injured parties to receive full compensation and the larger amounts of the deductibles increase the likelihood that injured parties will be forced into dire financial circumstances; (3) the provisions enabling injured parties to sue for that portion of their medical expenses and lost income not payable by an insurer causes it to be inordinately expensive to recover damages for these injuries; and (4) the provisions precluding full compensation for medical expenses and lost income but enabling suit for part of these damages establishes a slow and inefficient tort system for reparations.
404 So.2d at 358.
Again we note that the district court's objections do not apply to those motorists who have additional insurance coverage. But even with respect to those motorists who do not, the district court's conclusions are not correct. Under the new provisions the injured party still recovers most of his out-of-pocket expenses from his own insurer and is allowed to bring suit for the remainder. As the remaining amount subject to suit is drastically reduced from what it would have been if there had not been any no-fault coverage, the incentive to settle is greatly increased. The amount of PIP coverage that is provided is sufficient to prevent a party from being forced into dire financial circumstances and accepting unduly small settlements. Furthermore full compensation is provided in cases where the injured party himself is more than 20% at fault. Thus we find that in most instances the legislature's objectives of insuring prompt recovery of expenses without protracted litigation are still being met.
The district court also found that increasing the permissible amount of deductible was discriminatory and oppressive against poor persons. The court reasoned that poor persons opting for the maximum deductible would be driven into dire financial circumstances if injured in an automobile accident. This argument is speculative. The purpose of raising the permissible amount of deductible is to prevent car owners who have some other type of insurance coverage from paying premiums for duplicative coverage. Purchasers of insurance contracts choose one of the optional deductibles and we should presume that they do so with knowledge of the consequences. This provision is reasonably related to the legislative objective of minimizing the cost of insurance in this state.

EQUAL PROTECTION
Finally, Dillon argues that the threshold provisions of section 627.737(2), which require some sort of permanent injury before a suit for pain and suffering can be brought, unconstitutionally deny him equal protection of the laws. The district court correctly followed Lasky in finding that these provisions did not deny plaintiffs their right to equal protection. Facing similar provisions the Court in Lasky found:
Likewise, then, the "permanent injury" threshold (as we shall refer to it) does not constitute a denial of equal protection of the laws. As we have noted above, a classification does not deny equal protection if it is reasonable and non-arbitrary, treating all persons in the same class alike, and the difference between those included in the class and those excluded from it bears a substantial relationship to the legislative purpose. [Citations omitted.] The classification here in question treats all persons permanently injured in a vehicular accident alike, thus meeting *19 one element of the test. It is not arbitrary to differentiate between persons permanently injured and those who will recover from their injuries insofar as allowing only the former group to recover (under this particular threshold) for pain and suffering. Rather, this is a reasonable classification allowing those most likely to incur substantial and prolonged pain to recover damages to recompense them, while not granting such right of recovery to those substantially less likely to incur any prolonged pain.
Lasky v. State Farm Insurance Co., 296 So.2d at 19.
In conclusion, we find that sections 627.736(1), 627.737, and 627.739 of the Florida Statutes (1979), do not violate the rights of access to courts, due process, or equal protection. Accordingly, we reverse the decision of the district court of appeal and remand this case with instructions that the trial court's final judgment be reinstated.
It is so ordered.
OVERTON, ALDERMAN and McDONALD, JJ., concur.
OVERTON, J., concurs with an opinion.
SUNDBERG, C.J., concurs in part and dissents in part with an opinion, in which ADKINS, J., concurs.
OVERTON, Justice, concurring.
I concur but find that the act as amended is at the absolute outer limits of constitutional parameters, particularly in the amendment of section 627.736(1), Florida Statutes (1979), which reduced personal injury protection for medical expenses and loss of earnings.
SUNDBERG, Chief Justice, concurring in part and dissenting in part.
Although I concur substantially with the majority opinion, I feel compelled to dissent from the holding that section 627.737(2), Florida Statutes (1979), is constitutional insofar as it eliminates all causes of action for intangible damages for nonpermanent injuries. Furthermore, I must observe that the provisions of section 627.736(1)(a)  (b), Florida Statutes (1979), reducing the medical expenses and lost income benefits come perilously close to "the outer limits of constitutional tolerance." Carter v. Sparkman, 335 So.2d 802, 806 (Fla. 1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977). But because there is no bright line, we should defer to legislative judgment on the appropriateness or "fine tuning" of such benefits in the whole scheme of the act.
The complete elimination of any right of recovery of intangible damages for nonpermanent injuries is, however, quite another thing. In Lasky v. State Farm Insurance Co., 296 So.2d 9 (Fla. 1974), this Court approved the $1,000 threshold limitation on recovery of intangible damages for nonpermanent injuries sustained in automobile accidents finding that it comported with due process and equal protection. No real analysis was made of infringement by the threshold provision on access to the courts guaranteed by article I, section 21, Florida Constitution. But complete elimination of the common law right to redress for such injury and damages requires that analysis now. When I apply the principles of Kluger v. White, 281 So.2d 1 (Fla. 1973), I am compelled to the conclusion that section 627.737(2) violates article I, section 21 of our constitution by absolutely denying access to the courts to vindicate a prior existing common law right to recover intangible damages for nonpermanent injuries. This right is withdrawn without supplying any viable alternative just as was condemned in Kluger. If the right to intangible damages for nonpermanent injuries can be constitutionally eliminated then so too could the right to damages for permanent injuries. For this reason I dissent from the holding that section 627.737(2) is constitutional insofar as it prohibits recovery of intangible damages for nonpermanent injuries.
ADKINS, J., concurs.
NOTES
[1] 627.736 Required personal injury protection benefits; exclusions; priority. 

(1) REQUIRED BENEFITS.  Every insurance policy complying with the security requirements of s. 627.733 shall provide personal injury protection providing for payment of all reasonable expenses incurred for necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices; necessary ambulance, hospital, and nursing services; and funeral and disability benefits to the named insured, relatives residing in the same household, persons operating the insured motor vehicle, passengers in such motor vehicle, and other persons struck by such motor vehicle and suffering bodily injury while not an occupant of a self-propelled vehicle, all as specifically provided in subsection (2) and paragraph (4)(d), to a limit of $10,000 for loss sustained by any such person as a result of bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle as follows:
(a) Medical benefits.  Eighty percent of all reasonable expenses for necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and necessary ambulance, hospital, and nursing services. Such benefits shall also include necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through prayer alone for healing, in accordance with his religious beliefs.
(b) Disability benefits.  Eighty percent of any loss of gross income and loss of earning capacity per individual, unless such benefits are deemed not includable in gross income for federal income tax purposes, in which event such benefits shall be limited to 60 percent, from inability to work proximately caused by the injury sustained by the injured person, plus all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for the injury, the injured person would have performed without income for the benefit of his household. All disability benefits payable under this provision shall be paid not less than every 2 weeks.
Any insurer providing medical or disability benefits which have been reduced under this section shall also provide a corresponding rate reduction to the insured in proportion to the reduction of benefits provided.
(c) Funeral, burial, or cremation benefits.  Funeral, burial, or cremation expenses in an amount not to exceed $1,000 per individual.
Only insurers writing motor vehicle liability insurance in this state may provide the required benefits of this section, and no such insurer shall require the purchase of any other motor vehicle coverage as a condition for providing such required benefits. Such insurers shall make such benefits available through normal marketing channels. Any insurer writing motor vehicle liability insurance in this state failing to comply with such availability requirement as a general business practice shall be deemed to have violated part VII of chapter 626, and such violation shall constitute an unfair method of competition or an unfair or deceptive act or practice involving the business of insurance, and any such insurer committing such violation shall be subject to the penalties afforded in such part, as well as those which may be afforded elsewhere in the insurance code.
[2] 627.737 Tort exemption; limitation on right to damages; punitive damages. 

(1) Every owner, registrant, operator, or occupant of a motor vehicle with respect to which security has been provided as required by ss. 627.730-627.741, and every person or organization legally responsible for his acts or omissions, is hereby exempted from tort liability for damages because of bodily injury, sickness, or disease arising out of the ownership, operation, maintenance, or use of such motor vehicle in this state to the extent that the benefits described in s. 627.736(1) are payable for such injury, or would be payable but for any exclusion or deductible authorized by ss. 627.720-627.741, under any insurance policy or other method of security complying with the requirements of s. 627.733, or by an owner personally liable under s. 627.733 for the payment of such benefits, unless a person is entitled to maintain an action for pain, suffering, mental anguish, and inconvenience for such injury under the provisions of subsection (2).
(2) In any action of tort brought against the owner, registrant, operator, or occupant of a motor vehicle with respect to which security has been provided as required by ss. 627.730-627.741, or against any person or organization legally responsible for his acts or omissions, a plaintiff may recover damages in tort for pain, suffering, mental anguish, and inconvenience because of bodily injury, sickness, or disease arising out of the ownership, maintenance, operation, or use of such motor vehicle only in the event that the injury or disease consists in whole or in part of:
(a) Significant and permanent loss of an important bodily function.
(b) Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement.
(c) Significant and permanent scarring or disfigurement.
(d) Death.
(3) When a defendant, in a proceeding brought pursuant to ss. 627.730-627.741, questions whether the plaintiff has met the requirements of s. 627.737(2), then the defendant may file an appropriate motion with the court, and the court shall, on a one-time basis only, 30 days before the date set for the trial or the pre-trial hearing, whichever is first, by examining the pleadings and the evidence before it, ascertain whether the plaintiff will be able to submit some evidence that the plaintiff will meet the requirements of s. 627.737(2). If the court finds that the plaintiff will not be able to submit such evidence, then the court shall dismiss the plaintiff's claim without prejudice.
(4) In any action brought against an automobile liability insurer for damages in excess of its policy limits, no claim for punitive damages shall be allowed.
[3] 627.739 Personal injury protection; optional limitations; deductibles; optional methods of payment for repair work. 

In order to prevent duplication with other private or governmental insurance or benefits for senior citizens and others with access to such insurance or benefits, each insurer providing the coverage and benefits described in s. 627.736(1) shall offer to the named insureds modified forms of personal injury protection as described in this section. Such election may be made by the named insured to apply to the named insured alone, or to the named insured and dependent relatives residing in the same household. Any person electing such modified coverage, or subject to such modified coverage as a result of the named insured's election, shall have no right to claim or to recover any amount so deducted from any owner, registrant, operator, or occupant of a vehicle or any person or organization legally responsible for any such person's acts or omissions who is made exempt from tort liability by ss. 627.730-627.741. Premium reductions for each modification or combination of modifications shall be adequate to recognize the reduction in hazard and shall be subject to the approval of the Department of Insurance.
(1) Insurers shall offer to each applicant and to each policyholder, upon the renewal of an existing policy, deductibles, in amounts of $250, $500, $1,000, $2,000, $3,000, $4,000, $6,000 and $8,000, said amount to be deducted from the benefits otherwise due each person subject to the deduction, and shall explain to each applicant or policyholder that if they have coverage under private or governmental disability plans, they may avail themselves of deductibles or other modifications as provided in subsections (1), (2), and (3).
(2) Insurers shall offer coverage wherein at the election of the named insured all benefits payable under 42 U.S.C. s. 1395, the federal "Medicare" program, or to active or retired military personnel and their dependent relatives shall be deducted from those benefits otherwise payable pursuant to s. 627.736(1).
(3) Insurers shall offer coverage wherein at the election of named insured the benefits for loss of gross income and loss of earning capacity described in s. 627.736(1)(b) shall be excluded.
(4) Insurers shall offer, at the election of the named insured, one of the following options:
(a) Either a direct payment to the policyholder or a payment to any person, corporation, association, or other business entity which performs repair work upon the motor vehicle, or a combination of the foregoing; or
(b) A payment to any person, corporation, association, or other business entity performing repair work upon the motor vehicle, when the payee is under contract with the insurer to perform such work at stipulated rates which are no greater than 85 percent of prevailing rates for similar work within the county where the payee performs the work upon the motor vehicle.
(5) Each insurer may prepare and distribute to each of its policyholders a listing of all business entities under contract with the insurer to perform motor vehicle repair work at the rates described in paragraph (4)(b) of this section. The listing shall include a clear and plain explanation of the options provided as required by this section, and shall further state that if the policyholder elects to have required motor vehicle repair work done by any such business entity, the rates stipulated in the contract with the insurer shall be all of the consideration which the business entity will demand for such work and shall be paid by the insurer.
(6) Insurers may offer coverage wherein, at the election of the named insured, medical services shall be limited to specified medical providers, including hospitals, which specified medical providers may be health maintenance organizations, as provided in chapter 641, part II.