W. SHARP, Judge.
Both the plaintiffs, Doreen and Stuart Ma-tiyosus, and the defendant, Charles Keaten, appeal from a final judgment in this personal injury action. The Matiyosuses argue there was an error in the jury instructions which requires a new trial. Keaten argues there was an error in the jury verdict form which the trial court should have corrected, resulting in a final judgment in his favor. We disagree with both arguments and affirm.
In March 1994, Keaten was driving about 45 miles per hour when he suddenly realized that Doreen’s vehicle had stopped in front of him. Keaten rear-ended Doreen’s vehicle, resulting in a serious accident. Both Doreen and Keaten were taken by ambulance to the local hospital.
In 1995, Doreen and her husband, Stuart, filed suit against Keaten. Over a four-day trial, numerous experts testified regarding the extent and permanency of Doreen’s injuries, her medical and work loss expenses and her need for continuing medical treatment. A surveillance video of Doreen was also shown to the jury.
The jury found that Keaten was 100% negligent in this accident. Nonetheless, the jury awarded Doreen nothing for her medical expenses (past and future) and nothing for lost earnings or lost earning ability. Doreen argues that this award was inadequate and was the result of an incorrect jury instruction on the collateral source rule.
On this issue, the jurors were given the following instruction:
In this case you should reduce the amount of compensation to which Doreen Matiyo-sus is otherwise entitled on account of medical insurance benefits or no-fault benefits, which the evidence shows Doreen Matiyosus has been paid or is payable pursuant to her no-fault insurance benefits or medical insurance benefits.
The standard jury instructions on the collateral source rule provide as follows:
6.13
COLLATERAL SOURCE RULE ...

a. Tort actions generally:

You should not reduce the amount of compensation to which (claimant) is otherwise entitled on account of [wages] [medical insurance payments] [or other benefits (specify)] which the evidence shows (claimant) received from his [employer] [insurance company] [or some other source]. The court will reduce as *1099 necessary the amount of compensation to which (claimant) is entitled on account of any such payments.

b. Actions arising out of ownership, operation, use or maintenance of a motor vehicle:

In this case, you should reduce the amount of compensation to which (claimant) is otherwise entitled on account of [wages] [disability benefits] [medical insurance benefits] [or other benefits (specify)] which the evidence shows (claimant) received from his [employer] [insurance company] [or some other source].
NOTES ON USE
1. If improper evidence of collateral benefits is inadvertently admitted or if, in the circumstances of the case, the payment of collateral benefits is inferred, 6.13a, the conventional collateral source charge, should be given immediately following mention in the charge of the particular element of damage to which the collateral source charge is properly applicable. See Paradis v. Thomas, 150 So.2d 457 (Fla. 2d DCA 1963); Greyhound Corp. v. Ford, 157 So.2d 427 (Fla. 2d DCA 1963). See § 768.76 F.S. (1986 Supp.), concerning particular collateral source deductions by the court.
2. 6.13b not 6.13a should be given in all actions for personal injury or wrongful death accruing before October 1, 1993, arising out of the ownership, operation, use or maintenance of a motor vehicle. 6.13b is derived from § 627.7372, F.S. (1987), which was repealed for causes of action accruing on or after October 1, 1993. Ch. 93-245, § 3, Laws of Fla. That statute specified which benefits are defined as collateral sources and which are specifically excluded from the definition. In all actions accruing on or after October 1, 1993, reduction for collateral source payments should be made by the court, not the jury, pursuant to § 786.76, F.S. (1986 Supp.), and 6.13a. (emphasis added)
In the present case, both sides introduced evidence and discussed collateral source payments, beginning with opening arguments. Doreen was also questioned about the amount of her bills and testimony was elicited that some of these payments were paid by her insurance company. An affidavit from Doreen’s health care insuror and the amount of personal injury protection payments were admitted into evidence without objection.
During the charge conference, Doreen’s counsel requested that the trial court read the instruction in which the court reduces the award by collateral sources, rather than the instruction in which the jury reduces the award by any collateral sources. However, his only reason was that he thought it would be easier for the court and counsel in chambers to do the mathematical calculations. Counsel did not argue that the law had been repealed or that because of the date of the accident, the other instruction was the proper instruction. Since this issue was not raised below, it has not been preserved for review.[1]
Even though the jurors awarded Doreen no medical expenses or lost earnings, they did award her $5,000 for pain and suffering. However, the jury also found that Doreen had not suffered a permanent injury as a result of the accident. Under Florida’s no-fault law, a plaintiff is not entitled to non-economic damages if the jury finds no permanent injury. See § 627.737(2), Fla. Stat. See also Chapman v. Dillon, 415 So.2d 12 (Fla.1982) (Florida’s no-fault law sets forth threshold requirements of some sort of permanent injury before a suit for pain and suffering can be brought).
Notwithstanding, the verdict form in this case specifically instructed the jury to award non-economie damages even if the jury found that Doreen had not sustained a permanent injury:
*1100-1102 6. Did Plaintiff Doreen Matiyosus sustain a permanent injury within a reasonable degree of medical probability as a result of Charles Keaten’s negligence?
Yes No X
If your answer to 6 is “no” answer 7(a) only, total the damages at the bottom of 7 answer 8(a) and total the damages at the bottom of 8.
7. What is the amount of any damages for pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, or loss of capacity for the enjoyment of life,
a. in the past? $5,000.00
b. in the future?
TOTAL DAMAGES OF Doreen Matiyosus $5,000.00
At the charge conference, the parties discussed proposed instructions, arranged and rearranged their order and corrected typographical errors. Defense counsel did not proof read the verdict form before it was sent to the jury.[2] After the jury returned its verdict finding no permanent injury but awarding non-economic damages, defense counsel objected to the verdict form. The judge suggested that the jurors could be brought back, told that the verdict was incorrect and asked to see if they could correct it. Defense counsel, however, declined that offer. He wanted to retain the finding of no permanent injury and then have the court enter a judgment in favor of the defense.[3] The time to resolve this issue was at trial— not on appeal. We find that this issue likewise has not been preserved for review.
AFFIRMED.
PETERSON and THOMPSON, JJ., concur.

. It should also be noted that plaintiffs' counsel did not file a motion for additur. ■

. Defense counsel mistakenly believed that he had already proofread this form.

. The jury obviously believed that Doreen was entitled to at least $5,000 in damages from this accident. Perhaps if the jury had been sent back with a corrected verdict form, it may have awarded her $5,000 in another form or found that her injuries were permanent.