965 So.2d 205 (2007)
Glenn SMITH, Appellant,
v.
Neil A. FISHER, M.D., Appellee.
No. 4D06-4922.
District Court of Appeal of Florida, Fourth District.
September 5, 2007.
Rehearing Denied October 25, 2007.
*206 Glenn Smith, Indiantown, pro se.
Mitchel Chusid and Scott M. Teich of Ritter Chusid Bivona & Cohen, LLP, Boca Raton, for appellee.
GROSS, J.
We write primarily to address the constitutionality of the Florida Vexatious Litigant Law, section 68.093, Florida Statutes (2005) under Article I, Section 21 of the Florida Constitution. Holding that the statute satisfies the constitution, we affirm.
In 2003, Glenn Smith filed a complaint under 42 U.S.C. § 1983 against Neil A. Fisher, a physician at Martin Correctional Institution, alleging a violation of his Eighth Amendment rights. The complaint was based on the quality of cream that Fisher prescribed for Smith's "itching condition."
Fisher moved for an order requiring Smith to provide security pursuant to section 68.093. The motion noted that in the five year period immediately preceding the filing of the complaint in this case, Smith had commenced five or more cases that had been "finally and adversely determined against" him. § 68.093(2)(d)1, Fla. Stat. (2005).[1] Smith responded with a motion that section 68.093 be declared unconstitutional.
*207 Judge Schack conducted a telephonic hearing and found that Smith was a vexatious litigant under "[s]ection 68.093(3)." Later, Judge Makemson ordered Smith to furnish $600 in security within 60 days pursuant to section 68.093(3)(b). Smith failed to post the security. Fisher moved to dismiss. After a telephonic hearing, the court dismissed the case on November 28, 2006.
Implicit in Judge Schack's order is the finding that Smith was unlikely to prevail on the merits of his action. To prevail on a 42 U.S.C. § 1983 claim, a plaintiff must show, among other things, that there was a violation of a right secured by the Constitution or federal law. See, e.g., Skinner v. City of Miami, 62 F.3d 344, 347-48 (11th Cir.1995). A difference of opinion between Smith and a prison medical staff member as to treatment for Smith's itching skin condition does not give rise to an Eighth Amendment violation. See also Estelle v. Gamble, 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); see Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir.1980), cert. denied, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981) (finding difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not, itself, state a constitutional violation); Ledoux v. Davies, 961 F.2d 1536 (10th Cir. 1992) (finding inmate's belief that he needed additional medication, other than that prescribed by a treating physician, was insufficient to establish a constitutional violation). Actions or inactions involving medical treatment may violate the Eighth Amendment only if they involve "something more than a medical judgment call, an accident, or an inadvertent failure." Murrell v. Bennett, 615 F.2d 306, 310 n. 4 (5th Cir.1980).
The $600 security required was reasonable on its face, far less than is typically incurred in a civil rights case to cover a "defendant's anticipated, reasonable expenses of litigation, including attorney's fees and taxable costs." § 68.093(2)(c), Fla. Stat. (2005).
Smith primarily argues that section 68.093[2] violates Article I, Section 21 of the Florida Constitution, which provides that "[t]he courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay."
This case pits the first clause of Article I, Section 21 against the secondleaving the courts at the mercy of every meritless, vexatious lawsuit will cause justice to be administered in all cases with delay. A frivolous case presents no "injury" to be redressed. Requiring defendants to endure lengthy proceedings to resolve meritless lawsuits is not administering justice "without . . . delay." Early in a case, section 68.093 procedure identifies lawsuits likely to be frivolous and subjects them to an expedited process.
"The constitutional right of access to the courts sharply restricts the imposition of financial barriers to asserting claims or defenses in court. Although courts have upheld reasonable measures, such as filing *208 fees,[[3]] financial preconditions that constitute a substantial burden on a litigant's right to have his or her case heard are disfavored." Psychiatric Assocs. v. Siegel, 610 So.2d 419, 424 (Fla.1992) (internal citation omitted), receded from on other grounds by Agency for Health Care Admin. v. Associated Indus. of Fla., Inc., 678 So.2d 1239 (Fla.1996); see Smith v. Dep't of Health & Rehab. Servs., 573 So.2d 320, 323 (Fla.1991).
In Psychiatric Associates, the supreme court evaluated a statute that required a plaintiff bringing a court action against a participant in a medical review board process "to post a bond sufficient to cover the defendant's costs and attorney's fees" before the action could be prosecuted. 610 So.2d at 421. The bond requirement applied in all cases, without consideration of the merits of a plaintiff's claim. Holding that the statute violated Article I, section 21, the court applied two alternative tests to evaluate the statute, drawn from Kluger v. White, 281 So.2d 1 (Fla.1973):
Although courts generally oppose any burden being placed on the right of a person to seek redress of injuries from the courts, the legislature may abrogate or restrict a person's access to the courts if it provides: 1) a reasonable alternative remedy or commensurate benefit, or 2) a showing of an overpowering public necessity for the abolishment of the right, and finds that there is no alternative method of meeting such public necessity.
Psychiatric Assocs., 610 So.2d at 424; see Cmty. Hosp. of the Palm Beaches, Inc. v. Guerrero, 579 So.2d 304, 305 (Fla. 4th DCA 1991), aff'd, 610 So.2d 418 (Fla.1992).
Section 68.093 satisfies the second Kluger test.[4]
In Mitchell v. Moore, 786 So.2d 521, 527 (Fla.2001), the supreme court equated the Kluger "no alternative method of correcting the problem" test with the "goal-method test used in both substantive due process and equal protection analysis for cases in which a fundamental right is taken." Under substantive due process goal-method analysis, if a state enacts legislation that infringes fundamental rights, courts will review the law under a strict scrutiny test and uphold it only when it is "narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). "Narrowly tailored" means that "the method for remedying the asserted malady must be strictly tailored to remedy *209 the problem in the most effective way and must not restrict a person's rights more than absolutely necessary." Mitchell, 786 So.2d at 527.
The compelling state interest behind section 68.093 is to prevent vexatious litigation from interfering with the business of the court system. "`Every lawsuit looks to two resultsto end a controversy, and to end it justly. . . .'" Fla. Land Rock Phosphate Co. v. Anderson, 50 Fla. 501, 39 So. 392, 394 (1905) (quoting Hoyt v. City of Danbury, 69 Conn. 341, 37 A. 1051 (1897)). Meritless lawsuits filed by vexatious litigants interfere with the court system's ability to timely and justly process cases. Such lawsuits generate hours of work for judges and court personnel, so that litigants with legitimate legal matters are delayed. In a frivolous lawsuit, justice delayed is justice denied to a defendant who expends time and money to bring the case to an end.
Concerned about frivolous inmate lawsuits, the legislature passed legislation in 1996 "that sought to limit the ability of prisoners to file numerous lawsuits under indigent status." Neveils, 25 Nova L.Rev. at 353 (citing Ch. 96-106, Laws of Fla. codified at §§ 57.081, 57.085, 92.351, 95.11, 944.279, and 944.28, Fla. Stat. (2000)). The legislature's introduction to Chapter 96-106 stated that "state and local governments spend millions of dollars each year processing, serving, and defending frivolous lawsuits filed by self-represented indigent inmates, and . . . the overwhelming majority of civil law suits filed by self-represented indigent inmates are frivolous and malicious actions intended to embarrass or harass public officers and employees." Ch. 96-106, § 1 at 93, Laws of Fla.
Focusing on meritless litigation filed by persons other than prisoners, the business section of the Florida Bar proposed section 68.091 to the legislature. Neveils, 25 Nova L.Rev. at 353. The Senate sponsor of the bill observed that the law was "aimed at those individuals with a propensity for filing harassing civil actions." Id.
Section 68.093 remedies the problem of meritless litigation in the most effective way and does not restrict the vexatious litigant's rights more than absolutely necessary. The definition of a "vexatious litigant" is not unreasonably broad; it is a person "who, in the immediately preceding 5-year period, has commenced, prosecuted or maintained, pro se, five or more civil actions in any court in this state [excluding small claims cases], which actions have been finally and adversely determined against such person." § 68.093(2)(d)1, Fla. Stat. (2005). The bright line of five unsuccessful, pro se civil actions within five years identifies likely abusers of the court system. Where there is smoke, there is fire. The average citizen does not file five, pro se, non-small claims civil lawsuits in a lifetime.
Lawsuits filed by an attorney do not count in the vexatiousness equation; the Code of Professional Responsibility and statutes such as section 57.105, Florida Statutes (2005) adequately screen against frivolous lawsuits when an attorney is involved in the filing decision. By relying on a litigant's recent history to define vexatiousness, section 68.093 is unlike those problematic statutes that restrict access to the courts without any determination "that the [litigant] has ever filed a frivolous or other improper action." Mitchell, 786 So.2d at 525.
Significantly, the determination that a plaintiff is a vexatious litigant does not shut the courthouse door. A defendant must move for a hearing to establish that a plaintiff is a vexatious litigant who "is not reasonably likely to prevail on the merits of the action against the moving defendant." *210 § 68.093(3)(a), Fla. Stat. (2005). After a hearing, if a court determines that a defendant is both a "vexatious litigant" and "not reasonably likely to prevail on the merits," the court "shall order the plaintiff to furnish security[5] to the moving defendant in an amount and within such time as the court deems appropriate." § 68.093(3)(b), Fla. Stat. (2005). If the plaintiff fails to post the required security, "the court shall immediately issue an order dismissing the action with prejudice as to the defendant for whose benefit the security was ordered." § 68.093(3)(c), Fla. Stat. (2005).
The statute subjects the vexatious litigant's case to close, up-front scrutiny. The statute has no effect on a case that is likely meritorious. A litigant who meets the statutory test for a "vexatious litigant," has the chance to present evidence to convince a judge that his lawsuit has merit, that he is "reasonably likely to prevail on the merits," before being required to post security. This finding is akin to a probable cause determination in a criminal case. If, after hearing evidence, a court finds that a plaintiff is a vexatious litigant unlikely to prevail on the merits, it is not unreasonable to condition the maintenance of the lawsuit upon the plaintiff providing security to compensate the defendant for financial losses that will arise from the litigation. This procedure provides a mechanism whereby the court system manages a meritless case early in litigation, before a defendant has incurred excessive expenses and the court system has expended many court hours handling the case.
Other methods of controlling frivolous lawsuits filed by vexatious litigants are ineffective. The Florida Rules of Civil Procedure operate on the implied assumption that the parties are acting in good faith. Erring on the side of giving a plaintiff his day in court, case law has construed the rules of procedure in a way that makes it difficult to confront the frivolity of a lawsuit early in a case. For example, in Gladstone v. Smith, 729 So.2d 1002, 1003 (Fla. 4th DCA 1999), this court affirmed a circuit court order requiring a pro se litigant to file his eleventh amended complaint "through counsel." By the time of the order on appeal, the case had gone through multiple hearings with four trial judges. Statutes awarding costs and attorney's fees at the end of a case have little effect on judgment-proof vexatious litigants, who may rely on their indigency to avoid even the filing fees. See Kreager v. Glickman, 519 So.2d 666, 667 (Fla. 4th DCA 1988) (discussing pro se litigant whose litigiousness resulted in a $1.5 million judgment against him, without "deter[ing] his activities in the least").
Section 68.093 does not present the problems of statutes found to contravene Article I, Section 21. The statute does not restrict any claim, frivolous or legitimate, filed by a person who does not meet the definition of a vexatious litigant. Cf. Mitchell, 786 So.2d at 528. The statute does not deny access to a court before any judicial determination. Cf., id. at 525-26. The statute does not require the posting of security regardless of the merits of the lawsuit. Cf. Psychiatric Assocs., 610 So.2d at 425; Cmty. Hosp. of the Palm Beaches, 579 So.2d at 304 (relying on dissent in *211 Guerrero v. Humana, Inc., 548 So.2d 1187 (Fla. 4th DCA 1989)).
For these reasons we hold that section 68.093 satisfies the second Kluger test and affirm.[6]
STONE and POLEN, JJ., concur.
NOTES
[1] The following list is a sample of the lawsuits filed by Smith:

1. Smith v. State, 765 So.2d 718 (Fla. 4th DCA 2000) (the trial court decision against plaintiff was affirmed);
2. Smith v. Moody, Warden, Taylor Corr. Inst., 770 So.2d 1233 (Fla. 1st DCA 2000) (cert. denied);
3. Smith v. Moore, 789 So.2d 348 (Fla. 2001) (habeas corpus denied);
4. Smith v. Moore, Sec't of Corr., 799 So.2d 1029 (Fla. 1st DCA 2001) (the trial court decision against plaintiff was affirmed);
5. Smith v. Fla. Dep't of Corr., 799 So.2d 319 (Fla. 1st DCA 2001) (the trial court decision against plaintiff was affirmed);
6. Smith v. Fla. Dep't of Corr., 833 So.2d 125 (Fla. 1st DCA 2002) (the trial court decision against plaintiff was affirmed);
7. Smith v. Fla. Dep't of Corr., 842 So.2d 117 (Fla. 1st DCA 2003) (affirmed);
8. Smith v. Fla. Dep't of Corr., 861 So.2d 29 (Fla. 1st DCA 2003) (the trial court decision against Plaintiff was affirmed);
9. Smith v. Jim Smith, et al., 864 So.2d 405 (Fla. 1st DCA 2003) (the trial court decision against Plaintiff was affirmed).
[2] Although no Florida case addresses the constitutionality of the Vexatious Litigant Law, other states have upheld similar statutes against constitutional challenges. See Robin Miller, Annotation, Validity, Construction, and Application of State Vexatious Litigant Statutes, 2006 A.L.R.6th 4 (2006); Deborah L. Neveils, Comment, Florida's Vexatious Litigant Law: An End To The Pro Se Litigant's Courtroom Capers?, 25 Nova L.Rev. 343 (2000); Taliaferro v. Hoogs, 236 Cal.App.2d 521, 46 Cal.Rptr. 147 (Cal.App.1965).
[3] In Mitchell v. Moore, 786 So.2d 521, 526 (Fla.2001), the supreme court identified three cases holding statutes to be constitutional under Article I, Section 21 because the "right of action at issue had been only marginally limited." See, e.g., Chapman v. Dillon, 415 So.2d 12 (Fla.1982) (threshold limits of no-fault statute provide a reasonable alternative to tort action and do not deny access to the courts); Purdy v. Gulf Breeze Enter., Inc., 403 So.2d 1325 (Fla.1981) (statute requiring reimbursement of insurer for PIP benefits where insured recovers from negligent third party does not deny access to the courts); Pinillos v. Cedars of Lebanon Hosp. Corp., 403 So.2d 365 (Fla.1981) (admissibility of collateral source evidence in medical malpractice actions upheld).
[4] We do not believe the "reasonable alternative benefit" test applies to this type of case. That test is appropriate where the legislature has cut off access to the courts for a type of action, but has provided an alternative means for judicial access. See Eller v. Shova, 630 So.2d 537 (Fla.1993) (holding that system of compensation that provided no-fault recovery was a reasonable alternative to the right to sue one's employer for a work related injury); Lasky v. State Farm Ins. Co., 296 So.2d 9 (Fla.1974) (upholding no fault law under Article I, section 21 because right to sue for certain damages was replaced with the ability to recover uncontested benefits and an exemption from tort liability).
[5] "Security" is defined by the statute as "an undertaking by a vexatious litigant to ensure payment to a defendant in an amount reasonably sufficient to cover the defendant's anticipated, reasonable expenses of litigation, including attorney's fees and taxable costs." § 68.093(2)(c), Fla. Stat. (2005). By use of the word "undertaking," the statute contemplates a bond, cash or otherwise, that could be taxed at the conclusion of the case.
[6] Because it was not raised in this case, we do not reach the issue of the constitutionality of that provision of section 68.093(3)(c), authorizing the dismissal of an action "with prejudice." We leave for another day whether that provision satisfies the "narrowly tailored" requirement of strict scrutiny analysis.