IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

CHARLES J. DAVIS,

      Appellant,

v.

BAY COUNTY JAIL, SHERIFF,
FRANK MCKEITHEN, ET AL.,

      Appellees.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D13-2119

Opinion filed October 13, 2014.

An appeal from the Circuit Court for Bay County.
Michael C. Overstreet, Judge.

Charles Davis, pro se, Appellant.

Pamela Jo Bondi, Attorney General, Tallahassee; Barbara C. Fromm of Jolly &
Peterson, P.A., Tallahassee, for Appellees Rick Anglin and Ronald Lippmann.

WOLF, J.

      In this prisoner civil litigation case, with one exception, we find no error in

the dismissal with prejudice of appellant's four-time amended complaint. Upon

close consideration of the amended complaint, we find that appellant has

sufficiently alleged facts in support of a 42 U.S.C. § 1983 claim of inadequate

medical care to avoid a motion to dismiss. We, therefore, reverse the order of dismissal in part and remand for further proceedings consistent with this opinion.

In his complaint (which this court concedes is not the model of clarity), appellant alleged that Rick Anglin, warden of the Bay County jail, and Doctor Ronald Lippmann, the physician overseeing medical care of inmates held in the jail, in their individual capacity, inflicted "cruel and unusual" punishment in violation of appellant's Eighth Amendment rights by demonstrating "deliberate indifference" to appellant's diagnosed medical condition and continuing severe pain. Appellant alleges he repeatedly requested medical passes and pain medication for a ruptured disk and pinched nerve in his lower back and that his condition was documented in medical records held by the jail from a prior incarceration. While Anglin and Dr. Lippmann were not personally involved in appellant's initial medical screening upon arrival at the jail, appellant alleges that both were informed of his continuing pain and requests for medical assistance through repeated grievance and medical request forms and both failed to provide adequate care. Appellant alleges that after seventy-eight days in detention, he was finally provided medical passes and pain medication, but only after notice of this suit was filed.

The trial court, after allowing multiple amendments, dismissed the complaint with prejudice, in part for failing to state facts sufficient to rise to the level of

constitutional violations for medical care. The court explained that the complaint attempted to hold Anglin and Dr. Lippmann responsible for "simply knowing" about alleged improper medical care rendered by the medical staff and failed to allege facts to hold them personally liable for another's negligent acts or omissions. This was error. For a constitutional cause of action against Anglin and Dr. Lippmann to survive a motion to dismiss, it is not necessary for appellant to allege facts to hold them liable for *another's* acts or omissions as the court asserts.

We review an order dismissing a complaint with prejudice under the de novo standard. See Hardwick v. Moore, 795 So. 2d 970, 972 (Fla. 1st DCA 2001).

Inadequate medical care can be the basis of an Eighth Amendment "cruel and unusual punishment" § 1983 claim in state courts. See Higgs v. Fla. Dep't of Corr., 647 So. 2d 962 (Fla. 1st DCA 1994). The United States Supreme Court has determined that deliberate indifference to a prisoner's serious medical condition may violate the Eighth Amendment prohibition against "cruel and unusual punishment." Estelle v. Gamble, 429 U.S. 97, 104–05 (1976) ("We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the

3

treatment once prescribed."). As the court explained, "deliberate indifference," or purposely ignoring the "serious medical needs" of prisoners, amounts to "cruel and unusual punishment" forbidden by the Eighth Amendment. Id.

The "deliberate indifference" standard involves both an objective and a subjective component. The objective component is met by evidence of "serious medical need" which includes, in relevant part, the existence of "chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003). Appellant's allegation of continual severe pain coupled with the claim that appellant was eventually provided the medical passes and pain medication he sought appears to meet this objective component.

The subjective component requires an official to know the facts that could have shown the prisoner's health was in danger *and* the official must actually believe the prisoner's health is in danger. Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Notably, a mere difference of opinion between an inmate and prison medical staff does not give rise to an Eighth Amendment violation. See Smith v. Fisher, 965 So. 2d 205, 207 (Fla. 4th DCA 2007). However, some types of situations where courts have found prison medical staff to be "deliberately indifferent," and

4

not just exercising differences of professional opinion, include failure to provide treatment for diagnosed conditions and failure to investigate the medical situation enough to make an informed judgment -- including reviewing medical records. See Hudson v. McHugh, 148 F.3d 859, 861 (7th Cir. 1998); and McElligott v. Foley, 182 F.3d 1248, 1252, 1256–57 (11th Cir. 1999) (finding in a Florida case that failure to inquire about and treat patient's severe pain, and repeated delays in doctors seeing the patient, could constitute deliberate indifference). Here, appellant alleges both a prior diagnosis of a ruptured disk and pinched nerve and the existence of prior medical records in the jail's possession confirming the diagnosis and treatment.

Because of the knowledge requirement of the subjective component, individual liability cannot attach through vicarious liability, such as respondeat superior. Liability requires a showing that the supervisor themselves acted with "deliberate indifference." See Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir. 1986) (discussing the ways in which supervisors may be found liable under § 1983); and Burton v. Lynch, 664 F. Supp. 2d 349 (S.D.N.Y. 2009) (attaching liability to prison official who reviews prison grievance evidencing an ongoing constitutional violation and fails to remedy the violation only when the violation is in fact ongoing and subject to remedy by that official). Thus, the supervisor can become personally liable under the correct facts.

In this case, appellant alleged that both Anglin and Dr. Lippmann were well aware of his complaints and they themselves failed to act. This is a separate allegation from any claim that the medical staff initially failed to provide adequate care. In focusing on whether Anglin and Dr. Lippmann could be personally liable for another's acts, the court overlooked the fact that the complaint alleged that the two men would be directly liable for their own acts or omissions. For a cause of action against Anglin and Dr. Lippmann to survive a motion to dismiss, it is not necessary for appellant to allege facts to hold them liable for *another's* acts or omissions as the court asserts.

Appellant alleged that both Anglin and Dr. Lippmann were "deliberately indifferent" to his serious medical needs, specifically chronic severe pain, and failed to provide adequate care for seventy-eight days despite learning of the improper medical care via repeated grievances and medical request forms. These are all facts alleged in the complaint that would support a § 1983 claim for improper medical care. We reverse the order of dismissal only as it pertains to Anglin and Dr. Lippmann for appellant's constitutional claim of inadequate medical care. We affirm the order in all other respects.

REVERSED in part, AFFIRMED in part, and REMANDED for further proceedings.

LEWIS, C.J., CONCURS; MAKAR, J., CONCURRING IN PART AND DISSENTING IN PART WITH OPINION.

6

MAKAR, J., concurring in part, dissenting in part.

Shortly after his arrest, Charles J. Davis was placed in the Bay County detention center in Panama City, Florida on January 6, 2011. According to the allegations in his five page, fifth amended complaint, which relates only to the time he was a pre-trial detainee at the center, he made known to medical staff upon his arrival that he had preexisting injuries for which pain medications and other accommodations were necessary (such as a lower bunk, work restrictions, and avoidance of stairs). His medical evaluation and decisions about his medical treatment were made by a physician's assistant, who denied his initial request for accommodations as well as his renewed requests a few weeks later during a physical exam.

Although neither the warden, Rick Anglin, nor the physician overseeing the center's provision of medical services, Dr. R. Lippman, were involved in these medical decisions, Davis alleges he filed grievances about the lack of proper medical care and accommodations, which were denied by the warden, the physician and the physician's assistant. He alleges that shortly thereafter, on March 24, 2011, "all requested medical passes and pain meds, were finally issued" after he notified the warden that he was going to file a lawsuit. A little over a week later, Davis filed his initial complaint in circuit court, naming nine individuals and the

7

county commission as defendants who engaged in a range of offenses against him, which was dismissed due to its "vague, incomplete or incomprehensible" allegations. Over the course of almost the next two years, the same trial judge allowed Davis to amend his complaint multiple times to overcome various deficiencies. The fifth iteration of his complaint—which consisted of state and federal claims—was ultimately dismissed with prejudice by the trial judge, who concluded that Davis had failed "to allege facts sufficient to rise to the level of a constitutional violation." He also ruled that insufficient facts were alleged to hold Warden Anglin and Dr. Lippman "personally liable for another's negligent acts or omissions." This appeal ensued.

Because dismissal of all of the state and federal claims was appropriate, allowing Davis's federal constitutional claim to proceed against the warden and the supervisory physician is error. The theory of Davis's federal constitutional claim is that both of these individuals were on notice that his serious medical needs were not being met (because of his grievances) and that they acquiesced in these deprivations (by denying the grievances) thereby imposing individual liability on them under section 1983. But a viable claim of individual liability under section 1983 must overcome various pleading hurdles, which Davis has failed to do, even in light of the leniency given to pro se litigants.

Under Florida procedural law, a complaint that simply strings together a series of sentences and paragraphs containing legal conclusions and theories does not establish a claim for relief. See Rule 1.110, Fla. R. Civ. P.; see e.g., Barrett v. City of Margate, 743 So. 2d 1160, 1162-63 (Fla. 4th DCA 1999) ("It is insufficient to plead opinions, theories, legal conclusions or argument."); Maiden v. Carter, 234 So. 2d 168, 170 (Fla. 1st DCA 1970) ("It is a fundamental principle of pleading that the complaint, to be sufficient, must allege ultimate facts as distinguished from legal conclusions which, if proved, would establish a cause of action for which relief may be granted."). Pro se litigants get leniency in amending their complaints, but in the end they must meet pleading requirements to allege ultimate facts holding the defendants liable. Barrett, 743 So. 2d at 1162-63 ("The complaint, whether filed by an attorney or pro se litigant, must set forth factual assertions that can be supported by evidence which gives rise to legal liability.").

Similar principles apply in federal courts: a complaint that patches together a string of legal conclusions will not survive a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). If legal conclusions are alleged, they are *not* deemed true for purposes of a motion to dismiss. Id. ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). As the Supreme

9

Court has long held, "we are not bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). Likewise, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citation omitted).

Here, Davis—despite many opportunities to allege a claim—has come up short. The allegations applicable to Warden Anglin and Dr. Lippman amount to legal conclusions "couched as" factual allegations. Davis claims:

- "[T]hat his 14th Amendment rights towards a pretrial detainee, was [sic] violated by warden, Rick Anglin, and medical staff, physician R. Lippman, each, in their individual capacity, due process clause."

- "Cruel and unusual punishments - denial of medical passes, placed into confinement twice by not having required medical passes. Warden, Rick Anglin, medical staff, physician, R. Lippman, each, in their individual capacity. Petitioner had to suffer with severe pains in his head, neck, lower back, because of his improper care, and no meds."

- "[T]hat warden, Rick Anglin, oversees the Bay County Jail, and he has a duty to assure that all pretrial detainees are provided with proper

10

medical care. He further states that physician, R. Lippman, oversees his asst., Kathi Norman, knowingly and willingly allowed his asst., to continue to give a pretrial detainee improper medical care. Prior notice was given to warden, and medical staff, that a law suit was in process of being filed, on or about March 2011."

These amount to legal conclusions that the two defendants violated his rights, which need not be accepted as true. Iqbal, 556 U.S. at 678-79 (legal conclusions "are not entitled to the assumption of truth."). They are classic examples of formulaic labels that fall short under applicable pleading standards. Twombly, 550 U.S. at 555.

Similarly, because Davis is asserting a deliberate indifference claim under the Eighth Amendment, he must plead facts showing that actions taken by prison officials were done with the intent or purpose of causing harm; it is not enough to allege a prison official had knowledge of the harm. Iqbal, 556 U.S. at 676-77 ("Under extant precedent purposeful discrimination requires more than 'intent as violation or intent awareness of consequences[.]' It instead involves a decisionmaker's undertaking a course of action 'because of,' not merely 'in spite of' [the action's] adverse effects upon an identifiable group.") (internal citations omitted). But that is all Davis has done.

11

- Davis "states that medical staff, warden, Rick Anglin, *knowingly and willingly* made him suffer with severe pains, even though he had prior medical files to verify his complaints." (emphasis added).

- Davis "states that warden Rick Anglin, and physician, R. Lippman, both *knew* of his improper medical treatments by the facility asst., physician, Kathi Norman." (emphasis added).

- Davis pleads: "Delibert [sic] Indifference - Physician, R. Lippman, warden, Rick Anglin, each, in their individual capacity, both R. Lippman and warden *knew* of petitioner's serious medical needs and failed to provide him with adequate care." (emphasis added).

Nowhere does Davis allege specific facts of the type that would support a "deliberate indifference" claim; instead, he alleges that the defendants merely "knew" of allegedly improper care and failed to take remedial steps within their authority, which falls short of the requisite standard for this type of constitutional violation. Iqbal, 566 U.S. at 676-77; see also Pers. Adm'r of Mass. v. Feeny, 442 U.S. 256, 279 (1979). His allegation that the actions were "willingly" done is a legal conclusion that fails to advance a viable claim; at most it is a legal conclusion that serves only to frame the structure of a claim. Iqbal, 556 U.S. at 678-79 ("While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations."); see also Barrett, 743 So. 2d at 1162-63; Maiden, 234 So. 2d at 170.

Prison officials exercise their judgment (and sometimes negligent judgment) daily in denying medical requests and grievances with knowledge that the grievant-prisoners have made claims for specific medical care or treatment. Liability does not exist in these situations absent facts showing that prison officials acted with the requisite subjective intent to harm and engaged in conduct more culpable than negligence, i.e., deliberate indifference. Differences of opinion and negligence do not meet the constitutional standard. See, e.g., Farmer v. Brennan, 511 U.S. 825, 835 (1994).

This analysis is based on principles of Florida procedural law (and federal principles consistent with Florida principles); it is not based on the even more demanding "plausibility" standard in federal law. Iqbal, 556 U.S. at 678. Nonetheless, it is noteworthy that had Davis's case been removed to federal court (as almost always happens in state section 1983 actions), it would likely have been dismissed without as many opportunities for amendment and likely summarily affirmed on appeal. See Rosa v. Fla. Dep't of Corr., 522 Fed. Appx. 710, 715-16 (11th Cir. 2013) (inmate provided an opportunity to amend, but made only "threadbare assertions of alleged constitutional violations, without further factual support" which are insufficient under Iqbal). Notably, the claims in Rosa included

claims that the warden and others "were deliberately indifferent either to his grievances or to the retaliatory actions of their subordinates." Id. The inmate also alleged that one defendant "was deliberately indifferent to his care and safety, and that [another defendant] was liable for her 'no care policy,' which led to the filing of false reports." Id. Much like Davis's claims, the inmate's claims were dismissed and then affirmed on appeal because they "were too conclusory and vague to satisfy the pleading standards set forth in Twombly and Iqbal." Id.

In addition, the alleged actions of Warden Anglin and Dr. Lippman in denying Davis's grievances are just as consistent with lawful conduct as Davis's constitutional claims; absent some statement of ultimate facts showing that these officials acted in an unconstitutional manner, dismissal was proper. Iqbal, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'") (quoting Twombly, 550 U.S. at 557). The fact pattern that Davis alleges is consistent with lawful conduct for which the defendants have no legal liability; applying a "deliberate indifference" label to this conduct does not add any ultimate fact distinguishing lawful from unlawful conduct.

Florida's judicial system is open to litigants asserting federal claims that meet pleading standards. Davis—a prolific prisoner-litigant with four cases currently lodged in this court—was given exceptional leniency in his attempt to

14

assert federal and state claims; none satisfy the basic pleading requirements of Florida law, including his federal claim, whose dismissal should also be affirmed.